MARION LEON, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MAY 17, 1918. No. 19569.

1. **Negligence: QUESTION FOR JURY.** Where different minds may reasonably arrive at different conclusions from the same state of facts, as to whether the facts proved established negligence, the question of negligence in such case is for the jury, and not for the court.

2. **Carriers: DUTY TO GUEST OF PASSENGER.** Where a person, with the permission of an employee of a railroad company, enters a passenger coach with a departing guest who is a passenger, to see such passenger off, it is the duty of the company to exercise ordinary care to prevent injuring such person while entering and while within and while alighting from the coach.

3. ———: INJURY TO GUEST OF PASSENGER: LIABILITY. In such case, the company is liable for negligently injuring a person who so accompanies a guest into one of its coaches.

4. ———: ACTION FOR INJURIES: PETITION: EVIDENCE. The record examined, and *held,* the petition states a cause of action and the verdict is supported by the testimony.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Former judgment of reversal vacated, and judgment of district court affirmed.*

*Byron Clark, Jesse L. Root* and *J. W. Weingarten,* for appellant.

*Lambert, Shotwell & Shotwell* and *Edward Simon,* contra.

DEAN, J.

Mrs. Marion Leon, plaintiff and appellee, aged 22, sued defendant for personal injuries alleged to have been sustained by her in being thrown from the lower step of one of defendant's coaches that was "negligently and carelessly moved, jerked and suddenly started," as alleged, at its Omaha depot as she was about to alight therefrom after accompanying into the coach one of defendant's outgoing passengers who was her guest and about to leave the city. She recovered a judgment for $1,350, and defendant appealed. This cause is before us. on rehearing. The former hearing was before the commission, and on their recommendation we reversed the judgment of the district court.

Plaintiff's petition alleges in substance that she was permitted by the employees of defendant to pass through the depot gate and to board a coach in defendant's train that an employee negligently and carelessly represented to her "would remain stationary for a period of four to five minutes from the time she boarded it; that, relying and depending upon said permission, advice and representation, plaintiff boarded said car and remained there * * * not more than two minutes; that she then immediately left said car, and that while she was in the act of stepping. therefrom * * * defendant, acting by and through its agents, negligently and carelessly moved, jerked and suddenly started said car without giving plaintiff any notice or warning whatever that said car was about to be moved, thereby throwing plaintiff violently to the ground and upon said brick pavement; * * * that, as a direct, immediate and proximate result of the negligence and carelessness of defendant," she received the injuries complained of.

Defendant's answer denied generally the averments of the petition, and alleged that "none of its servants, * * * had authority to represent to the plaintiff * * * that its trains would remain stationary for any period whatsoever; * * * that any injury or inconvenience plaintiff may have suffered as the result of the movement of any of defendant's trains, same resulted from plaintiff's carelessness and negligence, and by reason of risks which she assumed in going upon defendant's premises and into its cars, and did not result from any negligence or carelessness on the defendant's part." Plaintiff's reply was a general denial.

Miss Grojinsky had been plaintiff's guest at her home in Omaha for about two weeks. She was a stranger there, and being unacquainted with the streets and car service plaintiff accompanied her to the depot at about 3 o'clock in the afternoon of August 3, 1914. Together they were permitted to proceed through the station gate to the train, upon Miss Grojinsky showing her ticket to the gatekeeper. Miss Grojinsky testified that when they arrived at the coach this conversation took place between her and defendant's brakeman who was standing at the steps: "I showed him my ticket and said, 'Red Oak?' He said, 'Yes, ma'am. This is the train.' I said, 'How many minutes before my train leaves?' He said, 'Ten minutes.' I said, 'Then my friend will have time to go on the train a minute to say good-bye?' 'Yes, lady, plenty of time;' and he ushered us on." She said that at the time she told the brakeman that Mrs. Leon was there merely to see her off. She added that plaintiff was in the coach with her not to exceed two minutes, and that a few seconds after Mrs. Leon left her seated in the coach "there was a sudden lurch of the car. * * * I was jarred, kind of thrown forward in my seat. * * * Q. What did you observe when you looked out of the window? A. Marion Leon had fallen from the car. A gentleman was assisting her. * * * Q. Where was she when you looked out of the

Leon v. Chicago, B. & Q. R. Co.

car? A. Lying on the brick—Q. Brick pavement? A. Or the ground.'' The witness said the coach at the time moved several feet forward, and that no signal was given that the train was about to be moved. On cross-examination she testified, ''Q. How far did the train move after this jerk that you spoke of before the train came to rest? A. Several feet. * * * About 7 or 8 feet. * * * Q. How long after it came to rest, after this jolt, before it departed? A. About 4 or 5 minutes.''

Plaintiff testified that she left her guest seated in the coach about two minutes after her entrance, and that as she was descending the steps, and just at the moment when her left foot was on the lower step and her right foot was in position to step down on the pavement, and while she was holding to the hand-rail of the car, ''this train gave a sudden jerk and I was thrown * * * to the pavement.'' She added that she was not warned and did not know the train was about to be moved, and that as a result of its sudden movement she fell violently to the pavement on her right side, thereby incurring the injuries complained of. Her testimony was substantially to the same effect as that of Miss Grojinsky respecting the conversation with the brakeman at the car steps. She testified that no box step was in sight, nor was any employee of defendant to be seen when she came out of the coach, and that when she fell she was assisted to her feet by a young man of about 18, a stranger, who partly supported and partly carried her through the depot gate and up the steps into the main waiting-room, and that after a brief period of rest, though in great pain, she boarded a street car that carried her to the store of her husband, and that he at once called a physician who came and administered first aid, and that she was again examined by the physician the same evening after being taken by her husband in a taxi to her home. She testified that as a result of the fall her entire right side was bruised and her arm was bleeding and her right foot was sprained, and that she

was in bed for ten days immediately after the accident, the doctor attending her "about twice a day," and that she was "up and down for about six weeks," suffering greatly all of the time. Plaintiff's testimony was corroborated by her husband, and by a nurse who attended her a few days, and who saw her often afterwards, respecting the bruised condition of her body and the length of time that she suffered. They also testified that before the accident plaintiff was strong and free from bodily ills and able to do ordinary housework, but that she was afterwards subject to nervous attacks and was unable to do but little of such work.

The attending physician testified that he examined plaintiff two times on the afternoon and evening of August 3. He said that on arriving at the store of plaintiff's husband "Mrs. Leon was sitting on a box at the rear end of the store, * * * suffering quite a bit of pain, and pretty sick, and I simply bandaged up the leg. It was badly swollen, and I ordered her to be taken home at once, and I saw her late in the afternoon again." He testified that plaintiff was in the third or fourth month of pregnancy, and that she bled internally, and that her injuries threatened to result in a miscarriage, and that because of the pain she suffered he administered morphine hypodermics for about two days. He also said that plaintiff was "flat on her back * * * from seven to ten days, and she was under observation for about four or five or six weeks after that." He was acquainted with her for about a year before he attended her and said that her health was good before the injury.

Defendant does not complain of the amount of the recovery; but, in view of its contention that the accident complained of by plaintiff was not sustained by her upon the premises of the railroad, we have discussed the pleading and the testimony at unusual length. In its brief defendant argues that the testimony adduced in support of plaintiff's petition, "viewed in the light of the uncontradicted and unimpeachable

evidence adduced by appellant, is as extravagant as a tale in the 'Arabian Nights.' Nothing but the gullibility of twelve mere men in passing upon the claim of an attractive woman can account for the verdict in this case." On the main points in dispute respecting the occurrence of the accident defendant's testimony was confined to that of several of its employees who worked at the Omaha depot and trainmen who were in charge of the train on the day of the accident, but they were apparently unable to recall the circumstances testified to by plaintiff and Miss Grojinsky.

The following facts seem to have been established to the satisfaction of the jury: That appellee was permitted by the carrier's agents to enter the railroad yards and the coach with her guest, and that they were informed by an employee at the car entrance that the train would not leave for ten minutes, and that she, in reliance thereon, remained in the coach about two minutes, when the train was negligently "jolted" or "jerked" forward several feet without warning to her, and that as a direct result of such negligent movement of the train as she was about to step from the coach she was thrown violently to the brick platform and thereby seriously injured. We conclude that the trial court properly refused to sustain appellant's motion for a directed verdict either on the ground of insufficiency of the petition or of the testimony. When different minds may reasonably arrive at different conclusions from the same state of facts, as to whether the facts proved establish negligence, the question of negligence in such case is for the jury. Appellant assigns numerous errors respecting the giving and refusing of instructions and also on the admission of testimony. We have examined the assignments and find that no reversible error was committed in the respects noted.

On the question of the liability of a common carrier for negligence in this class of cases, the weight of authority seems to be in accord with the conclusion we have adopted. Plaintiff was not a trespasser. She

was more that a bare licensee. She entered defendant's coach on the implied invitation of defendant, and, though she was not a passenger, yet the relation that she sustained to defendant in the premises that we have discussed was such that the carrier was bound to use such reasonable and ordinary care in the handling of its train as would permit her to alight without the infliction of serious injury to her person through the negligence of its employees. Failing in this the company is liable to respond in damages. 4 R. C. L. p. 1053, sec. 503; 6 Cyc. 615; *Doss v. Missouri, K. & T. R. Co.*, 59 Mo. 27; *Cherokee Packet Co. v. Hilson*, 95 Tenn. 1; *Whitley v. Southern R. Co.*, 122 N. Car. 987; *Missouri, K. & T. R. Co. v. Hibbitts*, 49 Tex. Civ. App. 419; *Cooper v. Atlantic C. L. R. Co.*, 78 S. Car. 562; *McElvane v. Central of G. R. Co.*, 170 Ala. 525; *St. Louis S. W. R. Co. v. Cunningham*, 48 Tex. Civ. App. 1; *Morrow v. Atlantic & C. A. L. R. Co.*, 134 N. Car. 92; *Missouri, K. & T. R. Co. v. Miller*, 15 Tex. Civ. App. 428.

The authorities hold generally that the carrier is not liable where a person who is not a passenger, but who accompanies a passenger into a coach, is injured in alighting therefrom after the train has begun its journey on schedule time, unless the injured person had previously notified some one in charge of the train of his purpose to alight. But that such is not the present case is obvious from a review of the record. Plaintiff entered defendant's coach by permission, and it is sufficiently pleaded, and to the jury's satisfaction proved, that those in charge of its train, with knowledge of defendant's entrance and before its scheduled time of departure and without warning, negligently "jerked and suddenly started" the coach from which she fell, and that such negligence was the immediate cause of her injury. *Johnson v. Southern R. Co.*, 53 S. Car. 203. In the present case defendant's witnesses denied any knowledge of the happening of the accident complained of by plaintiff. Some of the depot officers and trainmen testified that, if such an occurrence had

taken place at the time and under the circumstances that were related to the jury by plaintiff and Miss Grojinsky, they would have known about it. But the jury were not only the triers of fact, they were as well the judges of the credibility of the witnesses, and they adopted the plaintiff's version of the accident and we are not inclined to disturb their finding.

In boarding the coach of a common carrier a person is bound to anticipate such movements of the coaches as are usual and ordinary in making up its trains, such as the attaching of the engine or additional coaches or the like. But the duty devolves upon the carrier to use ordinary care under such circumstances. The carrier should anticipate that persons who have a right to be upon its coaches at its stations may be in the act of boarding or alighting therefrom, and it should therefore at such times use ordinary care to avoid violent and abrupt movements of its trains without warning. We would be loath to hold that a person, with the knowledge and under the implied invitation of the carrier, could not enter one of its coaches with a passenger to speed a parting guest who had been an inmate of the home and practically a member of the family without assuming the risk of injury from the negligence of its employees.

Defendant charges that plaintiff's petition does not allege that she entered the coach for the purpose of bidding her guest farewell, nor to render to her any necessary assistance. No motion to make plaintiff's petition more definite and certain in the particulars complained of appears in the record, nor was the objection that is now made to the pleading brought to the attention of the trial court in the motion for a new trial. In such case the practice is well settled that the case may be disposed of as if such issue had been pleaded, or amendments may be allowed at any time to conform to the proof. In the present case we find the petition was sufficient and no amendment was required.

Our former judgment is vacated, and finding no reversible error in the record the judgment of the district court is

AFFIRMED.

ROSE and CORNISH, JJ., dissent.

SEDGWICK, J., dissenting.

There is no doubt that any one has a right to go upon a passenger train of a common carrier to accompany a departing guest, or for any lawful purpose, and "in boarding the coach of a common carrier a person is bound to anticipate such movements of the coaches as are usual and ordinary in making up its trains, such as the attaching of the engine or additional coaches or the like. But the duty devolves upon the carrier to use ordinary care under such circumstances. The carrier should anticipate that persons who have a right to be upon its coaches at its stations may be in the act of boarding or alighting therefrom, and it should therefore at such times use ordinary care to avoid violent and abrupt movements of its trains without warning." (Majority opinion.) The cars did not leave the station within the time that the trainmen informed the plaintiff they would remain there, and if the starting of the car was an ordinary matter, such as passengers and others might expect at any time when a passenger train is standing, then passengers and others getting on and off the train should have that in mind and should not put themselves in a position where they would be thrown down by such a movement of the car. The question as to just how much the record shows that the car was jarred or moved is a very important question. The fact that the plaintiff fell and was severely hurt does not prove that there was any extraordinary movement of the car. It does not prove negligence on the part of the defendant. Her fall is equally consistent with a failure on her own part to use due care under the circumstances.

102 Neb.—35

The plaintiff testified that there was a "jerk or jolt" and she fell. Cars are seldom coupled without a "jerk or jolt." Plaintiff's friend testified "there was a sudden lurch of the car. * * * I was jarred, kind of thrown forward in my seat." She was not moved in her seat so that she could say without qualification that she was "thrown forward." She was "kind of thrown forward." That amounts to saying that it made some noticeable impression upon her. Any, even the slightest, movement might have had as much effect. This evidence fails to sustain the burden of proof which is upon the plaintiff to prove negligence of the defendant which was the proximate cause of her injury. If there is such an extraordinary impact or concussion as to necessarily throw persons down who are carefully entering or alighting from the train, there would ordinarily be plenty of witnesses by whom such fact could be proved. No one testified to any such fact except plaintiff and her friend, and their testimony fails to establish anything serious or unsual. If there had been any such extraordinary circumstance the trainmen would have known it. If their testimony is to be believed, we have affirmative proof that there was no negligence of defendant, and no proof of such an occurrence as would amount to negligence on the part of defendant.