HAMILTON BOYD *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

Suffolk.     March 8, 1955. — June 2, 1955.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Negligence*, Railroad: passenger's escort, station; Invited person; Contributory.   *Carrier*, Of passengers.

Evidence that one went onto the platform in a railroad station and boarded a train not as a passenger himself but to escort women passengers on board and to assist them with their luggage, and that he was unaware of signs in the station warning nonpassengers not to go on the platform or to board trains and was not given such warning otherwise, warranted a finding that he was an invitee to whom the railroad owed a duty of ordinary care.   [610-611]

A finding of negligence on the part of a railroad toward one who boarded a train from a crowded platform at a nonterminal station for the purpose of escorting women passengers on board and assisting them

with their luggage, but not as a passenger himself, was warranted by
evidence that he by statements to a railroad policeman on duty on
the platform and to the conductor of the train informed them of his
purpose in going on board, that the policeman actually saw him on
the train, that after walking through two of the cars looking for seats
for the women passengers he put down the luggage and started to
leave the train, and that as he was descending the steps of a car the
train started with "a definite jolt or a strong jerk" and he lost his
grip on a railing and fell onto the platform.   [611–612]

Evidence that one in leaving a railroad train after escorting passengers
on board at a station was descending the steps of a car, holding onto
a railing and "sort of turned around looking at the . . . [passengers]
and telling them goodbye," when the train started with "a definite
jolt or a strong jerk" and he lost his grip on the railing and fell onto
the platform did not require a ruling that he was guilty of contributory
negligence.   [612]

TORT.   Writ in the Superior Court dated October 23,
1951.

The action was tried before *Broadhurst*, J.

*Noel W. Deering*, for the defendant.

*Joseph Kruger*, (*Sidney Berkman & Alan J. Dimond* with
him,) for the plaintiff.

WILKINS, J.   The plaintiff, who was hurt in an accident
at Back Bay station, recovered a verdict in this action of
tort.   The defendant's one exception is to the denial of its
motion for a directed verdict.

Facts which the jury could have found are these.   On
Sunday, June 17, 1951, a holiday week end, the plaintiff
and another man accompanied two girls to the Back Bay
station, where the girls, but not the men, were to go to
Bridgeport on a train of the defendant which was due to
leave the South station at 11:05 P.M. E. S. T. and the Back
Bay station at 11:10 P.M. E. S. T.   After going to the
ticket office, they descended a stairway to the train plat-
form level.   In so doing the plaintiff did not observe either
of two signs, which a police officer, employed by the de-
fendant and called as a witness by the plaintiff, testified
on cross-examination were respectively at the head of a
stairway, and near an elevator, leading to the platform
level.   The signs, which were identical, read: "WARNING
— Persons not holding tickets or not intending to take pas-

sage, are warned not to go upon station platforms or get on board trains.  Permission will be issued by station master for persons to accompany children or aged or infirm passengers to trains if requested."

Upon reaching the platform level the plaintiff learned that the train had not arrived.  There were perhaps thirty to forty people there besides the four of them.  He asked the defendant's police officer from which direction the Bridgeport train was coming.  The officer replied that it would come from the left, the direction of the South station; that the Bridgeport cars would be at the far end of the track; but that he did not think they could find four seats together.  The plaintiff told him that only the girls were going, and that the men were just trying to help them get on the train.

The train pulled in while the plaintiff and his group were walking along the platform, as they has been directed, to the coaches at the head end.  They were almost at the point where they got on the train when it stopped.  The train consisted of eleven cars.  The first four were coaches, followed by a combination baggage car, another coach, and five Pullmans.  The train crew included a conductor, a flagman, and a ticket taker, who alighted from the train. The conductor, who was in general charge and had the duty of giving the starting signal, stood on the platform between the third and fourth coaches.  The others stood at points nearer the rear of the train.

The plaintiff, who was carrying some of the girls' luggage, asked the conductor if a certain car was the car to Bridgeport, and the latter said that it was.  The plaintiff then asked where would be the best place to find a seat, and the conductor replied it probably would be best to go forward. The plaintiff remarked, "We're just putting the girls on the train," to which the conductor made no reply.  The plaintiff then followed the other man and the girls aboard. They walked forward through two cars without finding seats.  They looked ahead into the third car, which was

congested and appeared to have all the seats taken and people in the aisle looking for seats. The plaintiff put the luggage in the vestibule. He did not know how long the train would be there, but he did know that it would not be there any longer than necessary to get all the passengers aboard. When he reached the third coach without seeing any seats, he thought that it was time to get off. So he said good-bye and started to leave the train. The plaintiff went first, starting to descend the four or five steps from the vestibule. He had hold of a railing, "sort of turned around looking at the girls and telling them goodbye," "as a fond farewell more or less." The train started. There was "a definite jolt or a strong jerk," and he lost his grip and fell forward onto the platform.

The police officer, whose duty it was to be at departing trains to watch for any unusual condition, did not see the plaintiff board the train, but saw him walking through the aisle as he glanced up into one of the coaches, probably the fourth head coach.

The conductor gave the signal to start. If he had known that the plaintiff was on board, he would have taken every precaution to see that he got off.

The defendant's elevator operator and announcer of trains at the lower platform testified that during his fifteen to twenty years' service he had from time to time seen people leave the station who had accompanied passengers; that the occurrence happens very frequently even though there are signs; that it happens almost every time a train leaves for New York, and is not uncommon at all.

The plaintiff, although not a passenger himself, was entitled to enter the station for the purpose of assisting passengers with their luggage, and in so doing he was owed the duty of ordinary care in the circumstances. Apart from limitation of the invitation by signs or other warning, the plaintiff could likewise go upon the station platform or even enter the cars. *Lucas* v. *New Bedford & Taunton Railroad*, 6 Gray, 64, 70. *Fournier* v. *New York, New Haven & Hartford Railroad*, 286 Mass. 7, 11–12. *Zaia* v. *"Italia" Societa*

*Anonyma di Navigazione*, 324 Mass. 547, 550–551. The evidence warranted a finding that the plaintiff was unaware of the signs or their contents and heard no other warning. For the purposes of our consideration, evidence of warning by signs or otherwise is out of the case. *Renaud* v. *New York, New Haven & Hartford Railroad*, 210 Mass. 553, 557. *Blanchette* v. *Union Street Railway*, 248 Mass. 407, 413. We need not consider any alleged waiver by the defendant. *Farber* v. *Mutual Life Ins. Co.* 250 Mass. 250, 253. *Tardiff* v. *Lynn Sand & Stone Co.* 288 Mass. 472, 479.

The defendant strongly contends that there was no evidence of its negligence. It stresses the holiday week end, the crowded platform and train, and the impracticability of holding the departure of the train from a nonterminal station to be sure that all nonpassengers had alighted. It was undoubtedly the duty of the plaintiff to notify some one of the train crew, or other railroad employee with duties to perform on the platform, of his purpose in entering the train before he could charge the defendant with the duty of exercising care for his safety when leaving. *Flaherty* v. *Boston & Maine Railroad*, 186 Mass. 567, 568. *Charron* v. *Canadian Pacific Railroad*, 115 Vt. 225, 228. See *Dunne* v. *New York, New Haven & Hartford Railroad*, 99 App. Div. (N. Y.) 571, 573; *Kohler* v. *Pennsylvania Railroad*, 305 Pa. 249, 251–252. The jury could find, however, that the defendant's policeman and its conductor both had notice, as they stood on the platform, that the plaintiff was to enter the train solely to aid two passengers; that this was true as to the conductor, although the plaintiff did not tell him in those precise words, and even though he did not actually see the plaintiff board the car beside which he was standing; and that later the policeman actually saw the plaintiff on the train. If the defendant allowed the plaintiff to enter the train with notice of his purpose to escort passengers, it was its duty to allow him a reasonable time to accomplish that purpose. *Lowden* v. *McClung*, 80 Fed. (2d) 694, 696 (C. C. A. 8). *Southern Railway* v. *Patterson*, 148 Ala. 77, 80. *Railway* v. *Lawton*, 55 Ark. 428, 434. *Cannon* v. *Atchison, Topeka &*

*Santa Fe Railway,* 101 Kans. 363, 367–368. *McClellan* v. *Illinois Central Railroad,* 204 Miss. 432, 449–450. *Lewis* v. *Illinois Central Railroad,* 319 Mo. 233, 239. *Leon* v. *Chicago, Burlington & Quincy Railroad,* 102 Neb. 537, 542–543. *Shimp* v. *Pennsylvania Railroad,* 11 N. J. Super. 88, 93. *Morrow* v. *Atlanta & Charlotte Air Line Railway,* 134 N. C. 92, 96. *St. Louis & San Francisco Railroad* v. *Isenberg,* 48 Okla. 51, 60–62. *Nelson* v. *Atlantic Coast Line Railroad,* 191 S. C. 345, 353. *Chesapeake & Ohio Railway* v. *Paris' Administrator,* 107 Va. 408. 11 A. L. R. (2d) 1075, 1083. 6 N. C. C. A. (N. S.) 1. In the circumstances, what was a reasonable time was also a fact for the jury.

Cases where it could not have been found that the railroad had been informed of the purpose of a person escorting a passenger are distinguishable. For example, in *Lucas* v. *New Bedford & Taunton Railroad,* 6 Gray, 64, 67, 70, where it was incidentally held that a railroad was under no duty to give a passenger's escort special notice of the time of departure of a train, apparently from a terminal station, there appears no notice to the defendant that the plaintiff was not a passenger.

It could not have been ruled as matter of law that the plaintiff was not in the exercise of due care. The jury could accept the plaintiff's testimony that the train was not moving when he started to descend the steps.

*Exceptions overruled.*