CAPE COD BANK AND TRUST COMPANY vs.
CONSTANCE L. LeTENDRE & others.[1]

Barnstable. May 8, 1981. — August 28, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Appellate Division: report.

The provisions of Dist. Mun. Cts. R. Civ. P. 64 (c) (3) (1975) are not juris-
dictional, and, therefore, dismissal of a draft report is not required by
a party's failure to furnish to the trial judge or opposing party a copy
of the draft report, but is within the judge's discretion. [483-486]

CIVIL ACTION commenced in the First District Court of
Barnstable on October 21, 1977.

The case was heard by *Welsh*, J., and a motion to dismiss
a draft report was heard by him.

*Edward E. Veara (Paul V. Benatti* with him) for Con-
stance L. LeTendre & another.

*J. Douglas Murphy* for the plaintiff.

LYNCH, J. This is an appeal from a decision and order of
the Appellate Division of the District Courts, Southern Dis-
trict, affirming the trial judge's allowance of the plaintiff's
motion to dismiss the request for a report.

The facts relevant to the issues before us are not complex.
The defendants seasonably filed a draft report with the clerk
of the court where the action was brought and where the trial
was, in large part, held. The defendants failed to deliver or
mail a copy of the draft report to the judge, addressed to him
at the court where the case was heard. Although the case was
tried principally in the Barnstable District Court, the judge
customarily sits in the Orleans District Court where he is the

---

[1] Yvon J. LeTendre. The remaining defendants, Paul E. Affleck and
Yvette D. Affleck, have not joined in the appeal.

presiding judge. The draft report was filed with the clerk of the Barnstable Division, but no copy was ever directed to the judge at either the Barnstable or the Orleans Court. The plaintiff's attorney alleges that he did not receive a copy of the draft report either, although the defendants' attorney states that one was mailed to him.

The judge found "that the provisions of Rule 64 (c) (3) have not been complied with by the defendant-appellant, for the reasons that (1) the trial judge was never given a copy of the draft report, (2) the defendant failed to file with the clerk of the trial court a copy directed to the trial judge, (3) the defendant appellant failed to file a certificate of service indicating what steps he took to comply with Rule 64 (c) (3). See Rule 5 (d) Dist Mun. Cts. R. Civ. P.," and consequently he allowed the motion to dismiss the request for a report.

The Appellate Division held that the failure of the defendants to provide the judge with a copy of their draft report was fatal to their right to prosecute the appeal, and that, therefore, the trial judge properly dismissed the draft report in accordance with Dist. Mun. Cts. R. Civ. P. 64 (c) (3) (1975), citing *Wind Innersole & Counter Co.* v. *Geilich,* 317 Mass. 327, 328-329 (1944); *Blake* v. *Seavey,* No. 8607 (Northern District, Aug. 30, 1979); *Sacca* v. *Freedman,* 31 Mass. App. Dec. 150, 153-154 (1965); *Fuller Elec., Inc.* v. *Cressaty,* 20 Mass. App. Dec. 168, 169-170 (1961).

Prior to oral argument in this case before the Southern District, the Appellate Division for the Western District decided the case of *McElholm* v. *Bacon,* No. 257 (Western District, Nov. 28, 1979). In that case, a copy of a draft report was filed with the clerk of the court where the case was tried within the time required by Dist. Mun. Cts. R. Civ. P. 64 (1975), but no copy of the report was ever directed to or delivered to the trial judge. The judge dismissed the draft report for failure to comply with rule 64. The Appellate Division reversed, stating that there had been a substantial effort to comply with the spirit and intent of the rules, that the ends of justice would be best served by allowing the matter to be heard on appeal on the merits.

Thus the holdings of the Appellate Division in the *McElhom* case and the one before us are in substantial disagreement. Although there are some significant factual differences between the two cases, these differences do not explain away the cases' divergent results.

We conclude that the provisions of rule 64 (c) (3), which require a copy of a draft report to be furnished to the trial judge and opposing counsel in addition to the copy to be filed with the clerk, are not jurisdictional and that the failure to meet the letter of those provisions should be considered by a trial judge, with a view to determining how far the appellant's failure has interfered with the accomplishment of the purposes implicit in the requirements of the rule and to examine the extent to which the other side can show prejudice. After such an assessment the judge should decide, in the exercise of his discretion, whether the appeal should go forward without more, or on terms, or fail altogether.

It is apparent that the judge was under the impression that he was without discretion in the matter and was required to dismiss the defendants' draft report. His memorandum and order dismissing the defendants' request for a draft report states, in part, that "failure to submit a copy of the report to the trial judge [has been] deemed a procedural defect of sufficient magnitude as to require dismissing a petition to establish a draft report [citations omitted]. In short, this case is governed by the principles enunciated in *Wind Innersole & Counter Co.* v. *Geilich,* 317 Mass. 327, 329 (1944) * which compels the conclusion that the motion to dismiss request for report and/or draft report be, and hereby is, allowed."

Such a rigid interpretation is contrary to both the letter and the spirit of our current procedural rules and the deci-

---

* "In reaching the conclusion, I have carefully considered the instant case in the light of *Schulte* v. *Director, Division of Employment Security,* 369 Mass. 74 (1975), and particularly footnote 4, *id.,* at P. 79. If the principles upon which *Famigletti* [v. *Neviackas,* 324 Mass. 70 (1949)] and *Wind Innersole* rest are to be modified it should be done by the appropriate Appellate Court."

sions interpreting them. Many older decisions viewed the requirements of the appeal process, as set out in court rules or statutes, as being jurisdictional with the result that failure to adhere to every requirement called for the dismissal of the appeal regardless of how inconsequential the breach. A more recent view recognizes that a rule of such harshness is not to be countenanced in modern jurisprudence. As the judge correctly pointed out, the modern view has been advanced in such cases as *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74 (1975). There it was said, "Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is being taken between serious missteps and relatively innocuous ones. Some errors or omissions are seen on their face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal. A prime example is attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by a statute or rule. The result in such cases is understandable and acceptable: it is comparable in some respects to the dismissal of an original claim brought to a court after the running of an applicable statute of limitations. . . . With respect to other slips in the procedure for judicial review, the judge is to consider how far they have interfered with the accomplishment of the purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice. After such an assessment, the judge is to decide whether the appeal should go forward without more, or on terms, or fail altogether" (citations omitted). *Id.* at 79-80. This view of appellate procedure is consistent with our appellate rules[2] and is in fact adopted by Dist./Mun. Cts. R. Civ. P. 64 (c) (6) (1975), which provides, in part, that "[i]f the party requesting the report has failed to comply with the statutes or any of these rules applicable to draft reports, the justice *may* dismiss it . . ." (emphasis supplied). Where the party claiming a

---

[2] Massachusetts R. A. P. 3 (a), as appearing in 378 Mass. 924 (1979).

report failed to comply with the provisions of rule 64, the judge should determine if the failure was an inconsequential breach or a serious misstep. See *Vyskocil* v. *Vyskocil*, 376 Mass. 137, 140 (1978). *Maurice Callahan & Sons* v. *Outdoor Advertising Bd.*, 376 Mass. 135, 136-137 (1978). *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978). Defendants' counsel, in his brief, has characterized the requirements of rule 64 (c) (3) as merely "proper etiquette" or "procedural nicet[ies]." Such a cavalier description of the explicit provisions of the rule demonstrates a lack of understanding of the time-tested system for establishing reports in the District Court. Underlying this system is the assumption that justice and fairness require that all parties receive notice and copies of the proposed draft report as soon after the trial as possible, before memories have been eroded by the passage of time. The current busy schedule of the District Courts and the fact that few, if any, of the judges of the District Courts can expect to remain in one court indefinitely, and that most travel frequently throughout the District Court system, underscore the wisdom of the requirement that the appealing party ensure that the judge receive a copy of the draft report. When the role that opposing counsel must play in establishing the contents of a report is considered in addition, it is clear that the procedural requirements of rule 64 (c) (3) are more than niceties or etiquette. It is for the trial judge to determine, however, in the first instance whether a party's failure to comply with the strict requirements of the rule was of any consequence, having in mind that he apparently had knowledge of the contents of the draft report prior to the hearing, and in fact had it before him, when he ruled on the plaintiff's motion to dismiss the report.[3] In exercising his discretion upon a rehearing of this matter the trial judge should determine the significance of any addi-

[3] Plaintiff's counsel alleged that the defendant also failed to furnish him a copy of the draft report, although the defendant maintains that such a copy was mailed to plaintiff's counsel.

tional failure, if any, to comply with the requirements of rule 64 (c) (3). The trial judge found in his memorandum and order that the defendant-appellant failed to file a certificate of service to indicate what steps he took to comply with rule 64 (c) (3), in accordance with Dist. Mun. Cts. R. Civ. P. 5 (d). Since there is no question that the defendant did not file a copy of the draft report directed to the trial judge, as required by rule 64 (c) (3), this finding can have significance only in respect to the allegation of plaintiff's attorney that he failed to receive a copy of the report as well. The absence of a certificate of service, as required by rule 5 (d) is not, in and of itself, the significant issue although the lack of the required certificate may be considered by the judge as some evidence whether or not the required service was actually made.

We, therefore, reverse the order of the Appellate Division dismissing the report, and remand the case to the District Court for further proceedings consistent with this opinion.

*So ordered.*