Staff, J.
This is an action of contract together with a claim of unfair and deceptive business practices brought by prospective buyers of real estate for the return of their deposit against the sellers after the agreement failed of consummation.
We find no prejudicial error in rulings complained of and properly reported to us.
Plaintiff filed in the neighborhood of forty-three (43) requests for rulings, some of which were denied “because they are excessive.” Rather than deal with each denied request serially we address only those issues raised by the requests argued in plaintiffs’ brief.[3]As to the rulings which were denied for prolixity, the judge further endeavored to act upon them by denying them for various reasons. Overlooking the denial of these requests for prolixity, we find no error in the judge’s rulings.
In passing, we suggest that when a trial judge believes the number of requests for rulings to be so excessive as to be manifestly unreasonable he has two alternatives: 1) order them stricken in their entirety, or 2) order that the party offering them refashion them or reduce them to a reasonable number. Hogan v. Coleman, 326 Mass. 770, 773 (1951); Stella v. Curtis, 348 Mass. 458, 463 (1965).
In our view, a trial judge should not select and act upon certain of the requests and deny others on the grounds of prolixity for the very act of picking and choosing might be considered biased.[4]Since in most cases requests for rulings are essential for appellate divisions of the district courts, an order striking the requests in their entirety results in an aggrieved party losing his appellate rights. Thoreson v. LeTendre, 1983 Mass. App. Div. 191, 193. Hence, in the spirit expressed by Judge Lynch of the Supreme Judicial Court in the case of Cape Cod Bank and Trust Company v. LeTendre, 384 Mass. 481, 483 (1981), which rejected the earlier rigid and harsh application of procedural rules and decisions in favor of a reasoned test based on whether the misstep “. .. interfered with the accomplishment of the purposes implicit in the statutory *37 scheme and to what extent the other side can justifiably claim prejudice,” we recommend that a trial judge generally should return excessive rulings to be refashioned or reduced in number.
The defendants filed with the Appellate Division a Motion to Dismiss Draft Report after the report had been allowed by the trial judge. The basis alleged for the motion is that more than three months elapsed from the time of filing the draft report to the time when the report was allowed by the trial judge and that hence the case ought to proceed as though no report had been filed. See Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (5).
We note initially that the docket does not show that the fourteen day notice required by the rule was sent. Further as Judge Lenhoff in Old Colony Bank of Worcester, N.A. v. Miller, 1981 Mass. App. Div. 202 at 205-206 points out the rule is not self-executing and that until further action is taken by a party the case remains in a “pending state.” Additionally the docket and motion itself indicate that the parties and trial court participated beyond the three month limitation without objection and thus we deem waved the drastic application of the rule which the defendants urge upon us. Cape Cod Bank and Trust Company v. LeTendre, supra. Accordingly the motion to dismiss is denied.
The trial judge made careful special findings and the facts giving rise to the issues presented by the requests and issues presented follow.
The plaintiffs entered into a written agreement to buy a certain parcel of real estate for the sum of Sixteen Thousand ($16,000.00) Dollars from the defendants calling for a conveyance on October 31,1980. In addition to the customary terms the agreement contained the following: “The Buyer’s obligation shall be subject to Buyer obtaining a bank mortgage in the sum of Thirteen Thousand ($13,000) Dollars.” And “Upon default by the Buyer, the Seller shall have the right to retain the binder; such right to be without prejudice to the right of the Seller to require specific performance or the payment of other or further damages, or to pursue any remedy, legal or equitable, which shall accrue by reason of such default,” and a clause providing that if seller were unable to give title and make conveyance as provided that all payments made by buyers should be refunded.
The agreement did not contain the clause found in many Massachusetts printed purchase and sale agreement forms, providing that the sellers might use purchase money to clear encumbrances on the property and that discharges of encumbrances might be recorded simultaneously with the delivery of the deed. See Greenberg v. Lannigan, 263 Mass. 594, 595 (1928). But see also Limpus v. Armstrong, 3 Mass. App. Ct. 19, 22 (1975) and many cases cited.
On the date of July 31,1980 at the time of execution of the agreement the plaintiffs paid Three Thousand ($3,000.00) Dollars to the defendants. The plaintiffs were unable to meet the closing date deadline on October 31,1980 and upon the payment of an additional sum of Three Thousand ($3,000.00) Dollars on November 19,1980 the agreementwas extended withApril 30,1981 set as the closing date. Again the plaintiffs could not meet the deadline and on May 30,1981 the agreement was further extended to December 31,1981 setas the new date for the conveyance. The plaintiffs further agreed to pay and did pay the defendants One Thousand One Hundred and Twenty ($1,120.00) Dollars at the rate of $140.00 per month “to cover the defendants’ interest payments on the mortgage.”
The plaintiffs again were unable to perform and the time for performance was orally extended to January, 1982. In January, 1982 the plaintiffs notified the defendants that they (plaintiffs) refused to complete the transaction.
*38 The defendants retained the total monies of Seven Thousand One Hundred and Twenty ($7,120.00) Dollars paid by plaintiffs.
The question of unfair and deceptive practices is not treated in the report and apparently is no longer an issue.
Some of plaintiffs’ contentions are disposed of by the trial judge’s special findings.
The trial judge specifically found that the written or oral agreement or extensions contained no condition relative to the plaintiffs’ selling their home.
He also found that the plaintiffs made no effort to obtain a mortgage for $13,000.00 thus rendering nugatory the condition of the agreement making the agreement-subject to the plaintiffs obtaining a mortgage in that amount. Such a condition imposes an affirmative burden on the party wishing to avail himself of the condition.
The plaintiffs’ argument in their brief that the acts and conduct of the defendants amounted to a waiver of the mortgage contingency condition finds no factual basis in the report.
The plaintiffs argue that the defendants never were ready able and willing to perform their part of the agreement for the reason that the land had a mortgage on it which was not discharged. The facts here are not dissimilar to those found in Limpus v. Armstrong, supra. The law does not require that the defendants go through a useless ceremony. “The law does not require a party to tender performance if the other party has shown that he cannot or will not perform.” Leigh v. Rule, 331 Mass. 664, 668 (1954). The refusal on January 19, 1982 of the plaintiffs to perform excuses the defendants from clearing encumbrances on their title and excuses them-from even attending a sham closing at the Registry of Deeds.
The plaintiffs urge the court to accept the argument that the defendants breached the agreement by not segregating the monies paid to them by the plaintiffs and by appropriating to their own use such sums before any alleged default by plaintiffs occurred. The short answer to that argument is that the report contains no finding that the defendants failed to segregate the monies. Further, the report does not indicate that the plaintiff took the procedural steps necessary to preserve his rights to obtain a ruling on the evidentiary question on this subject, Dist./Mun. Cts. R. Civ. P., Rule 64 (a), and in its absence we are without power to fill the void. Assuming arguendo that the defendants owed a fiduciary duty to segregate the funds and assuming that the defendants failed to do so, the claim here for which the plaintiffs seek compensation is not occasioned by the breach of that duty.
Plaintiff has briefed the question of allowing the defendant to retain the total amount paid by plaintiff as damages flowing from the breached contract. However, in spite of the great number of requests for rulings filed, plaintiff filed none addressing this subject.
With misgiving because the damages retained under the contract by defendant may be punitive,[5] we avoid the issue. As Judge Lynch most aptly
*39 pointed out recently in Bushnell v. Bushnell, 393 Mass. 462, 475 (1984) “. . . [T] he Appellate Division generally has only the power to decide questions properly reported to it [citations omitted]. While Mass. Dist./Mun. Cts. R. Civ. P., Rule 64 (i) (1975) gives the Appellate Division the authority to reverse, vacate, or modify rulings, or to order a new trial, that power is given only when there has been prejudicial error in the rulings complained of.”
The question as to whether by allowing the judgment for the defendant to stand might amount to enforcing a penalty contrary to public policy has not been briefed or argued. The record in this case does not disclose any of the kind of illegality, immorality, blatant fraud or other gross impropriety which might impel us to consider whether public policy dictates interference with a contractual relationship. It is said that agreements voluntarily made are not to be lightly set aside on the ground of public policy or because as events have turned it may be unfortunate for one party. Crimmins & Peirce v. Kidder Peabody Acceptance Corporation, 282 Mass. 367, 379 (1933). Compare Beckerman v. Pinkas, App. Div. No. 382 excerpted in Mass. Lawyers Weekly, December 10, 1984 issue, 13 M.L.W. 376.
Accordingly the report is dismissed.

 Dist./Mun. Cts. R. Civ. P., Rule 64 (f): “.. .The appellate division need not pass upon questions or issues not argued m briefs....”

 We do not intend to imply that this judge embarked upon a course of deliberately choosing to act upon some requests while ignoring others. It is apparent that he acted upon the first 20 requests and denied the remainder on the grounds of excessiveness.

 The trial j udge apparently felt that the monies that were paid after the agreement was signed and the initial payment made should be considered as part of the binder and subject to forfeiture should the plaintiffs default.
Our law disfavors penalties, and in contract actions where there is a default, simply attempts to place the non-defaulting party where he would have been had the contract been fully performed. In contracts, it is not uncommon to specify the amount to be paid in the event of breach and generally where actual damages are difficult to ascertain and where the sum agreed upon by the parties at the time of execution of the contract will be enforced. A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). “But where the actual damages are easily ascertainable and the stipulated sum is unreasonably and grossly disproportionate to the real damages from a breach, or is unconscionably excessive, the court will award the aggrieved party no more than his actual damages [citations omitted]. The words ‘liquidated damages and not as a penalty in the instant note are not decisive. If from the nature of the transaction and the attending circumstances it appears that the contract is a *39 cloak to hide a sum of money out of proportion to and differing greatly from the actual damages ordinarily arising from a breach, then the sum named as in the case at bar is a penalty. This is true even if it may be designated in the contract as liquidated damages [citations omitted].” A-Z Servicenter, Inc. v. Segall, supra.