Meagher, J.
The defendant is aggrieved by the trial judge’s denial of various of its requests for rulings and findings of fact as well as the trial judge’s denial of its motion for a new trial, motion to file a report late and motion to dismiss at the close of plaintiff’s evidence.
In the words of the defendant’s brief, the issue is whether or not,
Theevidencewasinsufficientasamatteroflawtoshowthatthedefendant was negligent and that the jerk or jolt was beyond that knowingly to be expected.
The trial judge did not make findings of fact. However, the trial judge issued a report and we treat the relevant facts in that report as findings of fact. They are:
At trial there was evidence tending to show the following:
On February 7, 1989, at approximately 1:30 p.m., the plaintiff, Virginia Penfield, a 74 year old woman, boarded an MBTA trackless trolley at Harvard MBTA Station. The operator of the MBTA trackless trolley was John Azar, co-defendant. Ms. Penfield was on her way to a doctor’s appointment at Mt. Auburn Hospital.
As the trackless trolley pulled- into the loading area of the platform, Ms. Penfield was the last person in a crowd of persons waiting to board that particular vehicle. The trackless trolley stopped and opened the left side door to allow the passengers to board. The plaintiff then boarded last and went up two steps when the ‘driver took off.’ She missed the third step (which is the floor of the trolley) and then fell to the floor of the trackless trolley.
The trackless trolley is equipped with a mirror on the inside just above the driver’s head to allow him to see the interior of the trackless trolley. The operator of the vehicle, Mr. Azar, observed the passengers board through the left side door by using the interior mirror. There were seats available.
As the vehicle moved, he heard a noise that indicated someone had fallen. He stopped the vehicle and a woman passenger assisted the plaintiff to a seat. The operator of the trackless trolley inquired as to her condition. She *28 declined his offers of medical help and continued on her way to her appointment with Dr. Shepton.
No other persons fell on the vehicle at that time and no other reports were made of any other falls or injuries with regards to this incident The trackless trolley was operating without mechanical problem.
When the trackless trolley reached the Mt. Auburn Hospital stop, the plaintiff asked for the driver’s badge number. She then left the trackless trolley and went to her appointment with Dr. Shepton at the Mt. Auburn Hospital. She complained of leg pain, dizziness and back pain. She laid down in the doctor’s examining room for a few hours after the incident. Dr. Shepton treated her and released her that day. She was x-rayed at Mt. Auburn Hospital that day. The x-rays were negative.
The plaintiff continued to treat with Dr. Shepton for a period of time after the accident and has complained of ankle pain since the time of the accident. During the period of treatment after the accident, Dr. Shepton prescribed medication, namely tylenol and librium, for her. Dr. Shepton had been treating the plaintiff for some time prior to the accident for high blood pressure. The doctor’s report, which was admitted over the objection of the defendant, stated that the findings of muscle spasm; pain in the back; continued pain and swelling of the left foot; and exacerbation of her high blood pressure are causally related to the fall. The plaintiff stayed in bed for two days after the accident and was confined to her home for three weeks after the accident. She experienced pain in her back and left foot. Plaintiff expended $1,472 in medical expenses and $150.00 in housekeeping expenses.
During trial, thefollowing ‘MBTARules for Operators and Other Employees of the Surface Lines’ were introduced; namely:
22. Assisting Passengers
All reasonable requests for help shall be honored politely and cheerfully, including all cases where it is obvious that reasonable assistance is required in getting on or off passenger vehicles, and getting in or about stations and platforms, by the elderly, infirm, crippled or blind.
24. (a) Employees should politely and persistently request standing passengers to move toward the less occupied space in pass vehicles in order that more passengers may board and a passageway may be kept clear for passengers desiring to board or alight.
(b) Doorways, aisles and passageways must be kept clear of all obstructions, such as large bundles, bags, suitcases and the like.
67. Safety of Passengers
(d) Passengers must be in a safe position before moving vehicle.
On these facts the trial court’s finding for the plaintiff is supported by the following *29 cases:McNeil v. New York, N.H. & H.R.R., 282 Mass. 575, 577 (1933); Cook v. MBTA, 13 Mass. App. Ct. 1032 (1982); Cantara v.MBTA, 3 Mass. App. 81, 82-3 (1975); White v. New York Central Railroad, 336 Mass. 379 (1957); Boyd v. New York, New Haven & Hartford Railroad, 332 Mass. 607 (1955); Berger v. MBTA, 355 Mass. 695 (1969); Gorman v. MBTA, 350 Mass. 760 (1965).
That which sent the plaintiff to the floor was both a violation of MBTA Operator Rules 22 and 67 (d), supra, in that the elderly plaintiff was not “in a safe position before” the defendant, Azar, moved the vehicle and itwas notthe usual jerk or joltwhich must be tolerated on the MBTA according to Berger v. MBTA, 355 Mass. 695 (1969). In addition, unlike the plaintiff in the Berger case, Ms. Penfield, was not yet up onto the floor of the MBTA car when the defendant took off. The plaintiffs situation in the instant case more closely resembles that of the plaintiff in the case of Gorman v. MBTA, 350 Mass. 758 (1965) in which the court wrote “... The operator owed the duty to use reasonable care to afford her an opportunity to get firmly within the vehicle before he started it.”
Another issue pertains to Dist./Mun. Cts. R. Civ. P., Rule 64 (a) .During the trial the defendant’s attorney objected to the introduction of two types of evidence. His objections were overruled and in each instance he announced that he claimed areport. However, the defendant failed to perfect his claim of report within the 5 days prescribed by Rule 64(a). Rule 64(a) is mandatory and states that “... a request for report shall be made at the time of the ruling and shall be reduced to writing and filed with the clerk within five days after hearing all evidence.” (emphasis added). The mandatory nature of Rule 64 (a) is supported by Supt. of Bournewood Hospital v. Peters, 1986 Mass. App. Div. 1 and Fiorino v. Worcester Polytechnic Institute, 1981 Mass. App. Div. 47. We agree with that statement in the Supt. of Bournewood Hospital case which notes,
While the Letendre case [Cape Cod Bank & Trust v. Letendre, 384 Mass. 481 (1981)] requires that we look upon technical non-compliance with the provisions of Rule 64 with a degree of leniency, we must conclude that there are at least some requirements of Rule 64 that must be very strictly followed because it involves the heart of the appellate review process. We view noncompliance with the time strictures governing the claim and prosecution of an appeal to the Appellate Division to be a ‘serious [procedural] misstep not a relatively innocuous one.’
We find no error and therefore the Report is dismissed.