MASSACHUSETTS OILHEAT COUNCIL *vs.* DEPARTMENT OF
PUBLIC UTILITIES & another.[1]

Suffolk. March 8, 1994. - November 14, 1994.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, & GREANEY, JJ.

*Department of Public Utilities. Practice, Civil,* Appeal, Dismissal of appeal. *Gas Company. Public Utilities,* Rate structure, Judicial review.

The procedure of a party seeking an appeal under the provisions of G. L. c. 25, § 5, from an order of the Department of Public Utilities, in filing a timely "petition for appeal" with the department's commissioners and thereafter in timely fashion filing an amended petition, but not the original, with this court, did not prejudice the department and intervener in any way so as to warrant the dismissal of the appeal. [799-802]

The Department of Public Utilities did not exceed its statutory authority by entering into special contracts for the sale of gas to certain customers at discount rates, where the provisions of G. L. c. 164, § 94, clearly authorize the use of such special contracts [802-804], and the discriminatory effect of the special contracts did not invalidate their use where there was a rational basis for the department to negotiate them [804-805].

A decision of the Department of Public Utilities to employ special contracts, pursuant to its authority under G. L. c. 164, § 94, to sell gas to certain customers at discount prices, was supported by adequate reasons; further, the department's findings were supported by substantial evidence and its method of analysis was not shown to be irrational. [805-807]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 1, 1993.

The case was reported by *Nolan,* J.

*Robert M. Granger* (*Nicholas J. Scobbo, Jr.,* with him) for plaintiff.

[1]Boston Gas Company, intervener.

*E. Michael Sloman*, Special Assistant Attorney General (*Michael B. Meyer*, Special Assistant Attorney General, with him) for Department of Public Utilities.

*Jennifer L. Miller* (*Catherine L. Nesser* with her) for the intervener.

O'CONNOR, J. This case, which is before us on a reservation and report by a single justice, is an appeal pursuant to G. L. c. 25, § 5 (1992 ed.), from a final order of the Department of Public Utilities (department). The appeal petition also asserts a right to a declaratory judgment pursuant to G. L. c. 231A (1992 ed.). The plaintiff, Massachusetts Oilheat Council (MOC), which is a trade association of fuel oil dealers, challenges the department's adoption of a regulatory framework authorizing Boston Gas Company (Boston Gas) to employ special contracts under G. L. c. 164, § 94 (1992 ed.), to sell gas to noncore customers at discount prices. The department's regulatory framework recognizes "non-core customers" as customers with a ready access to alternative energy sources, such as oil. "Core customers" lack such access and require "firm service," which obligates the energy supplier to meet the customer's complete energy requirements on demand with rates traditionally based on the supplier's embedded costs.

The defendants argue that this court lacks statutory jurisdiction to entertain this appeal, and that the exercise of G. L. c. 231A declaratory relief powers would be an inappropriate substitute for statutory jurisdiction. General Laws c. 25, § 5, provides in pertinent part as follows:

> "When so requested by any party interested, the commission [the department is under the supervision and control of a commission; c. 25, § 2] shall rule upon any question of substantive law properly arising in the course of any proceeding before the commission or any member or members thereof, and any party interested aggrieved by such ruling may object thereto, and may secure a review as hereinafter provided. . . . An appeal as to matters of law from any final decision, order or

ruling of the commission may be taken to the supreme judicial court by an aggrieved party in interest by the filing of a written petition praying that the order of the commission be modified or set aside in whole or in part.

"*Such petition for appeal shall be filed with the secretary of the commission within twenty days after the date of service of the decision, order or ruling of the commission,* or within such further time as the commission may allow upon request filed prior to the expiration of the twenty days after the date of service of said decision, order or ruling. . . . *Within ten days after such petition has been filed, the appealing party shall enter the appeal in the supreme judicial court sitting in Suffolk county by filing a copy thereof with the clerk of said court . . . .*

"The record on appeal shall include one copy of the petition of the appellant or other original papers, and of the decision, order or ruling of the commission; . . .

"Each claim of appeal shall set forth separately and particularly each error of law asserted to have been made by the commission. Upon the entry of the appeal it shall be heard and determined by the court, which shall have jurisdiction to affirm, modify or set aside such decision, order or ruling of the commission in whole or in part, or remand the proceeding to the commission with instructions subject to review by the full court upon appeal." (Emphasis added.)

The department and Boston Gas contend that MOC did not comply with the highlighted statutory language and that therefore the appeal must be dismissed.

On May 20, 1993, within twenty days after the date of service of the commission's (department's) order, MOC filed a "petition for appeal." Then, on May 28, without seeking or obtaining leave to do so, MOC filed an amended petition with the department, and on June 1 filed that amended petition in the Supreme Judicial Court for Suffolk County. The

original (unamended) petition was not filed in the county court until July, 1993. Therefore, the original petition was filed with the department in timely fashion and, within ten days after that filing, the amended petition was filed with the Supreme Judicial Court. The defendants would have us treat the amended petition for appeal as separate and distinct from the original petition, with the result that the original petition, having been filed in court more than ten days after it was filed with the department, was filed too late, and the amended petition, having been filed with the department more than twenty days after service of the department's order, was also filed too late. The result, the defendants argue, is that the Supreme Judicial Court lacks jurisdiction to entertain the appeal and the appeal should be dismissed.

We reject the defendants' jurisdictional argument. "Many older decisions viewed the requirements of the appeal process, as set out in court rules or statutes, as being jurisdictional with the result that failure to adhere to every requirement called for the dismissal of the appeal regardless of how inconsequential the breach. A more recent view recognizes that a rule of such harshness is not to be countenanced in modern jurisprudence." *Cape Cod Bank & Trust Co.* v. *LeTendre*, 384 Mass. 481, 484 (1981). In *Cape Cod Bank & Trust Co., supra,* we quoted *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79-80 (1975), as follows:

> " 'Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is being taken between serious missteps and relatively innocuous ones. Some errors or omissions are seen on their face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal. A prime example is attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by a statute or rule. . . . With respect to other slips in the procedure for judicial review, the judge is to consider how far they have interfered

with the accomplishment of the purposes implicit in the statutory scheme and to what extent the other side can justifiably claim prejudice. After such an assessment, the judge is to decide whether the appeal should go forward without more, or on terms, or fail altogether' (citations omitted)."

The procedure followed by MOC to obtain appellate review in this case did not prejudice the defendants in any way. We are satisfied that that procedure reasonably cannot be seen as "so repugnant to the procedural scheme" and "so destructive of its purposes" as to call for dismissal of the appeal. Having made that determination, we need not consider MOC's further argument that, in any event, it is entitled to proceed under G. L. c. 231A, the declaratory judgment statute. We shall decide the appeal under G. L. c. 25, § 5.

MOC argues that the department's order establishing the mechanism by which Boston Gas may enter into special contracts with noncore customers must be set aside, first, because "the department exceeded its statutory authority in relinquishing its regulation of sales of gas and thereby subjecting the public to unlawful abuses of monopoly" and, second, because "the department's decision to relinquish control is not supported by substantial evidence or adequate reasons."

The statute governing special contracts is G. L. c. 164, § 94 (1992 ed.), which provides in relevant part the following:

"Gas and electric companies shall file with the department schedules . . . showing all rates, prices and charges to be thereafter charged or collected within the commonwealth for the sale and distribution of gas or electricity, together with all forms of contracts thereafter to be used in connection therewith. Rates, prices and charges in such a schedule may, from time to time, be changed by any such company by filing a schedule setting forth the changed rates, prices and charges, but un-

til the effective date of any such change no different rate, price or charge shall be charged, received or collected by the company filing such a schedule from those specified in the schedule then in effect; *provided, that a company may continue to charge, receive and collect rates, prices and charges in accordance with a contract heretofore lawfully entered into, or, until the department otherwise orders, after notice to the company and a public hearing and determination that public interest so requires, may sell and distribute gas or electricity under a special contract hereafter made at rates or prices differing from those contained in a schedule in effect, providing a copy of the contract in each instance is filed with the department . . . .*

"Unless the department otherwise orders, all contracts for the sale of gas or electricity by gas or electric companies, except contracts for sale by a company whose sole business in this commonwealth is the supply of electricity in bulk, shall be filed with the department and shall not become effective until thirty days after filing. The department may investigate the propriety of any such contract, both before and after such contract has become effective, and may, after notice and a public hearing, make such order relative to the rates, prices, charges and practices covered by such contract as the public interest requires." (Emphasis added.)

The statute clearly authorizes the use of special contracts for the sale of gas on terms different from the terms contained in the schedule of rates currently in effect. Further, as demonstrated by the language, "until the department otherwise orders" and "[u]nless the department otherwise orders" the use and approval of special contracts is left to the broad discretion of the department.

MOC's argument, that the department has exceeded its statutory authority, ignores the permissive language of the statute and purports to turn a statutory grant of authority

into a statutory mandate, thereby unduly limiting the very authority granted. MOC says that G. L. c. 164, § 94, does not permit negotiation between Boston Gas and a noncore customer as to rate. However, in reaching this conclusion, MOC relies on cases which stand for the proposition that rates cannot be negotiated between the supplier and consumer of energy without the authorization of the department. See *Boston Edison Co.* v. *Boston,* 390 Mass. 772, 777 & n.6 (1984); *Haverhill Gas Co.* v. *Findlen,* 357 Mass. 417, 418-419 (1970). These cases do not support the contention that the department lacks the authority to authorize a supplier of energy to negotiate a rate with a consumer subject, as here, to standards set out by the department. The rule proposed by MOC would place an undue restriction on the department's ability best to serve the public interest and is contrary to the language of the statute. See *Boston Real Estate Bd.* v. *Department of Pub. Utils.,* 334 Mass. 477, 495 (1956).

MOC also argues that the department's action is unlawful because it is discriminatory. The discriminatory effect of the special contracts allowed under § 94 does not invalidate the department's action. This court has in the past recognized the validity of discriminatory rate structures when the discrimination is based on a reasonable classification. See *American Hoechest Corp.* v. *Department of Pub. Utils.,* 379 Mass. 408, 411 (1980) ("There can be no question that the department's jurisdiction over the entire rate structure includes the authority to approve a reduced rate for certain customers. *Boston Edison Co.* v. *Department of Pub. Utils.,* 375 Mass. 1, 47, appeal dismissed, 439 U.S. 921 [1978]. The question is whether the rate is unduly or irrationally discriminatory"). Here, the standards prescribed by the department provide a rational basis for the negotiation of special contracts, thereby allowing Boston Gas better to participate in the competitive segment of the energy market. The standards require that, in order to qualify for a negotiated rate, a noncore energy customer must have annual energy requirements of at least 30,000 million British thermal units and must have a bona fide energy alternative to purchasing ser-

vice from Boston Gas that would foreclose service under the ordinary tariff. MOC has not demonstrated that the differential treatment permitted by the department's order is unreasonable. See *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, 376 Mass. 294, 312 (1978).

In sum, the MOC's argument that the department has exceeded its statutory authority, or abdicated its statutory obligations, is without merit. The department has used the discretion granted it under the statute to promote the policy of increased competition in the energy market. The department has made the determination that expedited review of § 94 special contracts is necessary to allow Boston Gas effectively to compete in this market to the benefit of its shareholders, its ratepayers, and the general public. Much of MOC's brief is devoted to arguing the lack of wisdom in the department's policy choice. However, it would not be appropriate for this court to substitute its judgment for a judgment of the department regarding energy policy that cannot be said to be irrational. *Attorney Gen.* v. *Department of Pub. Utils.*, 390 Mass. 208, 228 (1983).

We turn to MOC's argument that the department's decision is not supported by adequate reasons. In a comprehensive decision reproduced in 125 pages of the record appendix, the department discusses its reasoning with emphasis on the increasingly competitive nature of the energy market, the benefits that competition confers on energy consumers, and the need to lighten the regulatory burden in order to encourage competition. The department also reasons that the marginal cost method of establishing minimum rates for noncore customers is an appropriate method of fostering competition while protecting Boston Gas's core customers. These are adequate reasons for the department's exercise of its discretion in establishing the scheme for expediting special contracts under G. L. c. 164, § 94.

MOC also contends that the department's decision lacks the support of substantial evidence. " 'Judicial inquiry under the substantial evidence test is limited to a determination of whether, within the record developed before the administra-

tive agency, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion.' *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988). G. L. c. 30A, § 1 (6) (1990 ed.). We accord 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992), quoting G. L. c. 30A, § 14 (7) (1990 ed.). Factual disputes and matters of credibility are for the agency, not this court, to resolve. *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 261 (1987)." *Greater Media, Inc.* v. *Department of Pub. Utils.*, 415 Mass. 409, 417 (1993). After a review of the record of the department proceedings, we conclude that its findings are supported by substantial evidence.

MOC points out that the record contains evidence that Boston Gas had sold gas to noncore customers in the past within the traditional regulatory framework. Additionally, MOC notes, the Boston Gas witnesses were unable to predict the amount of potential lost business absent lightened regulation. However, there was testimonial evidence before the department regarding the emerging competitive market for energy and the negative effect that traditional regulation has had on suppliers attempting to compete in that market. There was also evidence regarding the benefits to the public of a competitive energy market. While the evidence before the department may have been conflicting or even contradictory, it is within the department's discretion to determine the weight to be given conflicting evidence. *Massachusetts Elec. Co.*, *supra* at 305. Accordingly, we defer to the department's conclusion that lightened regulation is an appropriate response to the emerging competition in the energy market.

MOC also contends that the findings of the department regarding the marginal cost of adding noncore customers to the Boston Gas system were unsupported by substantial evidence. MOC's argument in this regard is again no more than a dispute with the department's decision to give weight to

certain evidence and not to other evidence. The department chose to evaluate the economic benefits of the proposed special contracts on a marginal cost basis. MOC argues that the methods chosen by the department to analyze marginal costs are faulty. However, MOC has not established that the method chosen by the department is irrational or lacks any logical basis in the record. MOC merely suggests alternate methods. Accordingly we shall not disturb the department's conclusion. See *Attorney Gen.* v. *Department of Pub. Utils.*, 392 Mass. 262, 268-269 (1984). This matter is remanded to the single justice to enter an order declaring the validity of the department's final order and affirming it.

*So ordered.*