TOWN OF TRURO *vs.* DEPARTMENT OF PUBLIC UTILITIES ·
& another.

Suffolk.    April 5, 1974. — June 11, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Zoning,* Public service corporation.    *Carrier,* Of passengers.    *Corporation,* Public service corporation.

A common carrier corporation carrying passengers by motor vehicles for ·
sightseeing purposes into the Cape Cod National Seashore was a
"public service corporation" within G. L. c. 40A, § 10.  [407-411]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on June 1, 1972.

The case was reserved and reported by *Quirico,* J.

*Daniel J. Fern* for the town of Truro.

*Morris Michelson* for Drifting Sands Dune Tours, Inc.,
intervener. ·

*Robert H. Quinn,* Attorney General, *& Walter H. Mayo,
III,* Assistant Attorney General, for the Department of
Public Utilities, submitted a brief.

BRAUCHER, J.    This appeal from a decision of the De-
partment of Public Utilities (DPU) raises the single ques-
tion whether Drifting Sands Dune Tours, Inc. (the carrier),
is a "public service corporation" for the purposes of G. L.
c. 40A, § 10, permitting an exemption from the zoning by-
law of the town of Truro (the town). The carrier transports
passengers for sightseeing purposes on a fixed route into the
Cape Cod National Seashore, pursuant to a DPU certifi-
cate of public convenience and necessity and to a license
from the town and a permit from the National Park
Service. During 1969 and 1970 the carrier employed three
vehicles, each having a capacity of seven passengers in
addition to the driver. The DPU granted an exemption

from the zoning by-law of the town, and we order affirmance.

We summarize the evidence bearing on the status of the carrier. Since 1962 it has engaged in the transportation of passengers for hire by motor vehicle from a motel in Truro over a fixed route within the National Seashore. The DPU issued a certificate of public convenience and necessity limiting the carrier to operation for sightseeing purposes only. In 1962 the carrier served the public with one vehicle. Pursuant to a permit issued by the Department of Public Works it constructed a terminal and parking facility across a State highway from the motel, and in 1969 and 1970 it employed three vehicles. It picked up passengers who had made reservations at other motels in Truro, and a Superior Court injunction against its operations had an unfavorable effect on the earnings of the other motels.

At the DPU hearing counsel for the town argued that the carrier was not a public service corporation, citing *Attorney Gen.* v. *Haverhill Gas Light Co.* 215 Mass. 394, 398 (1913). The DPU took note of that argument, but decided that the carrier's use of its terminal facility was reasonably necessary for the convenience and welfare of the public, and granted an exemption from the zoning by-law of the town under G. L. c. 40A, § 10. The town appealed under G. L. c. 25, § 5, and a single justice of this court reserved and reported the case without decision.

As the DPU apparently thought, the carrier was literally within the definition of "public service corporation" in the *Haverhill Gas Light Co.* case: "one private in its ownership but having an appropriate franchise from the State to provide for a necessity or convenience of the general public incapable of being furnished through the ordinary channels of private competitive business and dependent for its exercise upon eminent domain or some agency of government" (398). Eminent domain power was held unnecessary to the status of "public service corporation" for the purposes of G. L. c. 40A, § 10. *Wenham* v. *Department of Pub. Util.* 333 Mass. 15, 16-17 (1955). But the language of the *Haverhill Gas Light Co.* case was not primarily directed to

problems presented by common carriers by motor vehicle. Compare *Arizona Corp. Commn.* v. *Superior Court*, 105 Ariz. 56, 61 (1969). The Attorney General has ruled that a "trucking company" subject to G. L. c. 159B, "while it may well be a common carrier, is not a 'public service corporation' within the purview of G. L. c. 40A, § 10." Rep. A. G., Pub. Doc. No. 12, 1962, pp. 182-184. But compare *Freight, Inc.* v. *Township Trustees of Northfield Center Township*, 107 Ohio App. 288, 293 (1958).

Our decisions under G. L. c. 40A, § 10, have involved gas and electric companies and railroads.[1] Compare the list of "public service corporations" in G. L. c. 3, § 5, including railroads and street railways. In a variety of contexts we have long recognized the quasi public character of such corporations and the duties owed by them to the public. See, e.g., *Weld* v. *Gas & Elec. Light Commrs.* 197 Mass. 557, 558 (1908); *Western Union Tel. Co.* v. *Foster*, 224 Mass. 365, 372 (1916).

The carrier involved here has a license from the town of Truro under G. L. c. 159A, § 1, and a certificate of public convenience and necessity under § 7. By § 10, stemming from St. 1918, c. 226, § 2, it is expressly declared to be a "common carrier." See *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 98 (1920); *Roberto* v. *Department of Pub. Util.* 262 Mass. 583, 585 (1928). Since 1918 regulation of such carriers has rested on their similarity to street railways and railroads. Today § 1, as amended through St. 1956, c. 99, applies to a motor vehicle operating on a public way for the carriage of passengers for hire, "in such a manner as to afford a means of transportation similar to that afforded by a railway company, by indiscriminately

---

[1] *Wenham* v. *Department of Pub. Util.* 333 Mass. 15, 16-17 (1955) (gas company). *Medford* v. *Marinucci Bros. & Co. Inc.* 344 Mass. 50, 58 (1962) (railroad). *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 591 (1964) (railroad). *Mezitt* v. *Department of Pub. Util.* 354 Mass. 692, 695 (1968) (gas transmission). *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 86 (1968) (electricity). *Framingham* v. *Department of Pub. Util.* 355 Mass. 138, 143 (1969) (electricity). *Westborough* v. *Department of Pub. Util.* 358 Mass. 716, 718 (1971) (railroad). *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, 112-113 (1973) (gas company). Compare *Marinelli* v. *Board of Appeal of Boston,* 275 Mass. 169, 172 (1931) (Boston statute covered railroad but not fuel company, semble).

receiving and discharging passengers along the route on which the vehicle is operated or may be running, or for transporting passengers for hire as a business between fixed and regular termini." We are not here concerned with taxicabs or with buses providing "charter service," "special service," or "school service" under G. L. c. 159A, § 11A, as amended through St. 1971, c. 561, but with "motor vehicles engaged in what might be described as public service transportation." *Goodwin* v. *Department of Pub. Util.* 351 Mass. 25, 27 (1966). Under § 10 the DPU has general supervision and regulation of, and jurisdiction and control over, such common carriers "to the same extent as it has over railway companies," except as to the issue of securities.

We think it follows that such a common carrier of passengers by motor vehicle, like a railroad, is a "public service corporation." See Adler, Business Jurisprudence, 28 Harv. L. Rev. 135, 140-146 (1914). It is subject to the public duties of a common carrier, bound to observe the conditions of its certificate, to observe filed rates and schedules, and to serve the public without discrimination. See *Holton* v. *Boston Elev. Ry.* 303 Mass. 242, 245 (1939); *Blair* v. *Boston Elev. Ry.* 310 Mass. 1, 2-3 (1941). The town contends that a public service corporation must be "important," that its business must be "necessary and substantial," and that it must possess some "right of eminent domain or other large privilege." It is true that the carrier service involved in this case could lawfully be provided by an individual or a partnership rather than a corporation. But the statute does not disqualify a small enterprise merely by virtue of its size.

One purpose of G. L. c. 40A, § 10, is to ensure "broad and balanced consideration of all aspects of the general public interest and welfare and not merely examination of the local and individual interests which might be affected." *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 592 (1964). Public service corporations often operate beyond the boundaries of a single city or town. See *New York Cent. R.R.* v. *Ridgefield*, 84 N. J. Super. 85, 94

(1964); Rathkopf, Zoning and Planning (3d ed.) c. 72 (1972). The carrier here operated only within the town and the National Seashore, but it served tourists from afar. The DPU is empowered to balance the general interest against the local interest under the statute, and we think the town's fear that residential zoning will be "substantially imperilled if not eliminated altogether" is overdrawn.

A final decree is to be entered in the county court affirming the decision and order of the DPU.

*So ordered.*