MICHAEL MARTORANO & others[1] *vs.* DEPARTMENT OF PUBLIC
UTILITIES & others.[2]

Suffolk.  September 10, 1987. — December 14, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, JJ.

*Zoning,* Public utilities, Exemption. *Gas Company. Practice, Civil,* Re-
view of order of department of public utilities. *Department of Public
Utilities,* Judicial review, Findings. *Administrative Law,* Judicial review,
Findings, Substantial evidence.

In an action for judicial review of a decision of the Department of Public
Utilities, granting a gas pipeline company's petition under G. L. c. 40A,
§ 3, to exempt from local zoning regulations certain land on which the
company proposed to build a natural gas meter station, a citizen's group
opposed to the petition demonstrated no prejudicial error by its contention
that the department had improperly relied on an unsworn statement as
to construction costs, where substantial evidence, as to matters other
than costs, supported the department's decision, and where the depart-
ment was not required to find the company's proposed site to be less
expensive than an alternative site proposed by the citizen group. [261-
263]
Where, in an adjudicatory proceeding before the Department of Public Util-
ities on a gas pipeline company's petition under G. L. c. 40A, § 3, for
an exemption of certain land from local zoning regulations, the depart-
ment's decision granting the exemption rested on its resolution of dis-
puted factual issues involving assessments of credibility, an intervening
party opposed to the petition had no basis for claiming that the department
had accepted false testimony and that, consequently, its decision was
unsupported by substantial evidence. [263-265]
In an action for judicial review of a decision of the Department of Public
Utilities after an adjudicatory proceeding on a petition under G. L.
c. 40A, § 3, for exemption from local zoning regulations of certain land

---

[1] Fourteen other members of the Acton-Concord Citizen Coalition.

[2] Tennessee Gas Pipeline Company and Boston Gas Company, interveners.

on which a gas pipeline company proposed to build a natural gas meter station, there was no merit to the contention by a citizen's group opposed to the petition, that the department was arbitrary in its evaluation of alternative sites, where the department made its finding that the use of the company's proposed site was reasonably necessary for the convenience or welfare of the public on the basis of substantial evidence and with due regard for the relevant factors. [265-266]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 16, 1987.

The case was reported by *Abrams, J.*

*Steven Ferrey* for the plaintiffs.

*Thomas A. Barnico,* Assistant Attorney General, for Department of Public Utilities.

*Harold W. Potter, Jr.,* for Tennessee Gas Pipeline Company, intervener.

*Virginia A. McCarthy & L. William Law, Jr.,* for Boston Gas Company, intervener, were present but did not argue.

LYNCH, J. The Tennessee Gas Pipeline Company (Tennessee), a supplier of natural gas, petitioned the Department of Public Utilities (department) for an exemption under G. L. c. 40A, § 3 (1986 ed.), from local zoning regulations in order to permit Tennessee to construct a natural gas meter station in Acton. The department thereupon conducted a public hearing to determine whether the zoning exemption should be allowed. At the hearing, the Boston Gas Company (Boston Gas), and the Acton-Concord Citizen Coalition (coalition), a citizen's group opposed to the exemption, participated as interveners. On September 24, 1986, the exemption was granted. On October 10, 1986, the coalition moved the department to reopen the proceedings and reconsider its decision, but the motion was denied. The coalition petitioned the Supreme Judicial Court for the county of Suffolk under G. L. c. 25, § 5 (1986 ed.), to set aside or modify the department's decision. A single justice reported the matter to the full court. There was no error committed by the department.

We summarize the facts found by the department. Wholesalers and retailers of natural gas deliver and receive their product through underground pipeline networks. Gas owned by one company may, by contract, be transported through another

company's pipeline. Boston Gas stores natural gas in underground storage facilities in New York and Pennsylvania. Boston Gas and Tennessee have a contract, whereby Tennessee agrees to transport gas from the storage facilities through Tennessee's pipeline to delivery points in Massachusetts. A delivery point is a place where a buyer's and a seller's pipelines are physically connected. Gas meter stations similar to the one Tennessee plans to build in Acton are located at such delivery points.

Current levels of gas supplied to Boston Gas by Tennessee are insufficient to meet Boston Gas's needs during periods of peak demand. Tennessee presently supplies Boston Gas under a "best efforts" contract, i.e., Tennessee has agreed to transport gas when there is space available on its pipelines, but not when all capacity is filled by other customers who have "firm supply" commitments. Until recently, this arrangement has not posed a problem for Boston Gas, because it has been able to rely on Algonquin Gas Transmission Company, in periods of peak demand.

Algonquin has informed Boston Gas that it may no longer depend on this service. Therefore, Boston Gas sought to obtain gas transported by Tennessee on a "firm supply" basis. The two companies agreed that Tennessee would transport the extra gas on a firm supply basis (firm supply contract), but an additional delivery point would be needed to accommodate the extra gas. Boston Gas and Tennessee's pipeline networks would be connected at this delivery point and a gas meter station would be built above it. A site in Acton (Lawsbrook Road site) was ultimately chosen because (1) it is a location where the Tennessee and Boston pipelines already cross over one another (but are not yet physically connected), and (2) at that particular point on the pipeline, there is sufficient excess capacity to guarantee Boston Gas a firm supply of gas during periods of peak demand.[3]

---

[3] Tennessee's claim that this portion of the pipeline is the only place where it has sufficient excess capacity has been a hard-bitten bone of contention in this dispute. The coalition asserts that Tennessee could have

However, the Lawsbrook Road site is located in a residentially-zoned area. Therefore, in August, 1985, Tennessee petitioned the department for an exemption from the Acton zoning regulations in order to build the meter station on the chosen site. Notice was given to adjoining landowners and a public hearing was held. The coalition was granted permission to intervene in the case, and a formal adjudicatory proceeding was scheduled. During the adjudicatory proceeding, the coalition argued that the meter station could be built more inexpensively at any one of three alternative sites — the "Wayland site," the "Lincoln site," or the "Acton water district site."[4] After several days of evidentiary hearings, the department issued an order approving Tennessee's petition, finding therein that the facility was "reasonably necessary for the public convenience and welfare."

The coalition thereupon moved the department to reconsider its decision and reopen the proceedings on the grounds that (1) Tennessee's witnesses had made misrepresentations concerning both the carrying capacity of Tennessee's pipeline and the desirability of the alternative sites, and (2) the hearing examiner improperly relied on an unsworn letter of counsel as evidence in the case. The department denied the motion and this appeal followed.

---

built the meter station at any one of three other locations where its pipeline intersects with Boston Gas's pipeline. Tennessee does not deny that there are other places where the two pipelines intersect, but claims that, on the particular branch of its pipeline where these intersections are located, there is not enough excess capacity for the company to be able to guarantee Boston Gas a firm supply of gas during periods of peak demand.

The sites suggested by the coalition are all located on a branch of Tennessee's pipeline known as "line 200-1." The Lawsbrook Road site for which Tennessee seeks approval is located on line 200-2. Line 200-2 has more capacity than line 200-1 because line 200-2 is under "compression." That is, line 200-2 benefits from a kind of pump — or "compressor." This compressor forces the gas through the line. Line 200-1 also benefits from the compressor, but the department accepted Tennessee's statement that the additional horsepower allocated to that line does not serve to increase its capacity because of pressure reductions "upstream." See D.P.U. Order 85-207-A, at 3-7 (1986).

[4] The coalition also proposed a fourth alternative site, the "Concord site," which proved to be more expensive than the Lawsbrook Road site.

1. *Standard of review*. Review of the department's decisions is governed generally by G. L. c. 25, § 5. The appropriate standards of review for the department's decisions are set out in G. L. c. 30A, § 14 (7) (1986 ed.). *Boston Edison Co.* v. *Department of Pub. Utils.*, 375 Mass. 1, 9, cert. denied, 439 U.S. 921 (1978). *Newton* v. *Department of Pub. Utils.*, 339 Mass. 535, 543 & n.2 (1959). Therefore, we review the department's decision both for errors of law and for the sufficiency of the evidence under the "substantial evidence" test.[5] G. L. c. 30A, § 14(7). We accord due weight to the "experience, technical competence, and specialized knowledge" of the department. *Id. Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 539 (1984), and cases cited. Matters of credibility and factual dispute are for the agency, not this court, to resolve. *School Comm. of Wellesley v. Labor Relations Comm'n*, 376 Mass. 112, 120 (1978). With these principles in mind, we proceed to the questions presented on this appeal.

2. *The cost letter*. At the conclusion of the adjudicatory proceeding, the hearing examiner requested that Boston Gas "estimate the additional cost to Boston Gas associated with the alternative water district site." In response, Boston Gas submitted a letter outlining costs for both the Acton water district site and the proposed Lawsbrook Road site (cost letter). The coalition complained to the department that the cost letter attempted post hoc to inflate cost estimates already on the record for the Acton water district site and to deflate cost estimates for the Lawsbrook Road site. In its order, the department found that, "[i]n fact, construction costs would be higher at the Water District site . . . ." The only sworn testimony relative to cost presented at the hearing was that of the coalition's expert witness, Martin Smirlock, also a coalition member, who testified that costs at the Acton water district site would be *lower* than at the Lawsbrook Road site. The

---

[5] Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1986 ed.). See *Deacon Transp., Inc.* v. *Department of Pub. Utils.*, 388 Mass. 390, 395 (1983).

coalition therefore argues that the department erroneously relied on unsworn testimony to make its decision, in violation of 220 Code Mass. Regs. § 1.10 (1986), which provides in part: "All unsworn statements . . . shall not be considered as evidence on which a decision may be based."

The department found that "construction costs would be higher at the Water District Site" than at the Lawsbrook Road site. Since the only sworn testimony concerning cost came to the opposite conclusion, we must infer that the department's finding was based on something other than sworn testimony.

Although the department must have relied to some extent on its finding as to the relative costs of the two sites, it would have been warranted in rejecting the Acton water district site even without the cost letter. The department also found the Acton water district site to be less desirable because Tennessee would have only been able to acquire a leasehold interest rather than owning the site. Moreover, the department found that there was no guarantee that Tennessee would be able to obtain regulatory approvals necessary to use the Acton water district site. Furthermore, there is no requirement that the department find the proposed site to be the least expensive one; the availability of alternative sites is pertinent only as a "matter[ ] of fact bearing up on the main question whether the proposed site . . . is reasonably necessary for the convenience or welfare of the public." *Wenham* v. *Department of Pub. Utils.,* 333 Mass. 15, 17 (1955). G. L. c. 40A, § 3 (1986 ed.). Thus there was sufficient evidence, other than cost, which supported the department's decision.

There must be some showing of prejudice before an agency's disregard of its rules may constitute reversible error. *DaLomba's Case,* 352 Mass. 598, 603-604 (1967). "Courts have generally recognized that, even when a regulation which is meant to protect a party is violated, the party should be unable to insist on a new proceeding when there is little possibility that the violation had any effect on the agency's action." Note, Violations by Agencies of Their Own Regulations, 87 Harv. L. Rev. 629, 634 n.24 (1974). 1 F. Cooper, State Administrative Law 271 (1965), and cases cited. Cf. *American*

*Farm Lines* v. *Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970) (Interstate Commerce Commission entitled to "measure of discretion"); *Massachusetts Dep't of Correction* v. *Law Enforcement Assistance Admin.*, 605 F.2d 21, 27 (1st Cir. 1979) (any prejudice from agency's failure to follow internal guidelines minimal); *NLRB* v. *Monsanto Chem. Co.*, 205 F.2d 763, 764 (8th Cir. 1953) (agency's action in relaxing procedural rules "not reviewable except upon a showing of substantial prejudice"). The coalition has shown no such prejudice. As noted earlier, cost was not the sole basis for the department's rejection of the Acton water district site. Since "there is sufficient evidence in the record, independent of [the cost letter], on which the Department may have relied," there is no need to consider further this claim of error. *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 687 (1975).

The coalition's claim that, apart from the violation of 220 Code Mass. Regs. § 1.10, reversible error arose from the department's admitting the letter in evidence adds nothing. In this context reversible error cannot arise in the absence of prejudice.

3. *Carrying capacity testimony.* The coalition next contends that the department's decision was not based on substantial evidence because the decision rested on allegedly false testimony concerning the carrying capacity of Tennessee's pipelines. Some factual background is necessary.

As proposed by Tennessee, the meter station is to be built along a branch of Tennessee's pipeline known as "line 200-2." Two of the alternative sites proposed by the coalition — the Wayland site and the Lincoln site — are located along a different branch of the pipeline, "line 200-1." At the hearing, two Tennessee engineers — Robert D. Goodenough and Thomas P. Hollowell — testified repeatedly that the Wayland and Lincoln alternative sites would not be suitable because there was not sufficient excess "capacity" on line 200-1 to accommodate the additional volumes of gas to be transported under the firm supply contract. The department credited this testimony in its initial decision and order and in its denial of the coalition's motion for reconsideration.

In a memorandum acompanying its motion for reconsideration, the coalition had argued that Goodenough's and Hollowell's testimony regarding the carrying capacity of line 200-1 was demonstrably misleading. The coalition based this claim on a comparison of Goodenough's and Hollowell's testimony with an Interim Natural Gas Service application (INGS document) that Tennessee had filed with the Federal Energy Regulatory Commission. According to the coalition, the INGS document shows that Tennessee did in fact have sufficient excess capacity on line 200-1 to deliver the additional volumes of gas required by the firm supply contract. This claim was specifically denied by Goodenough and Hollowell in sworn affidavits. In its decision denying the coalition's motion for reconsideration the department concluded that "none of the new 'facts'" submitted by the coalition was "substantially or materially inconsistent with the testimony of [Tennessee's] witnesses."

In essence, then, this matter was a factual question involving assessments of credibility which the department chose to resolve in favor of Tennessee. It is not for this court to disturb that choice. "The proper function of the court is not to engage in complex fact determinations more appropriately committed to an agency, with staff and skilled experience to make them. Rather, the court must accept the factual determinations made by the agency if it finds they are supported by substantial evidence . . . ." *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 125, 128 (1973). See *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 395 Mass. 836, 847 (1985); A.J. Cella, Administrative Law § 1636 (1986), and cases cited.

Moreover, the department determined that the allegedly false statements were actually material taken out of context and misquoted by the coalition. D.P.U. 85-207-A, at 10 (1986). The department examined the hearing transcripts, the INGS document,[6] affidavits from Goodenough and Hollowell reaf-

---

[6]The coalition also claims as reversible error the fact that Tennessee failed to produce the INGS document in response to the coalition's interrogatories. We need not concern ourselves with whether production of the

firming their earlier testimony and affirming the consistency of that testimony with the INGS document, and an affidavit from the coalition's expert witness, Martin E. Smirlock, alleging inconsistency between the INGS document and the prior testimony of Goodenough and Hollowell.

The department simply accepted the testimony and the expertise of Goodenough and Hollowell over that of Smirlock. Thus, there is no basis for contending that its decision was based upon false and misleading testimony.

4. *The department's consideration of alternative sites.* Lastly, the coalition claims that the department was arbitrary in its evaluation of alternative sites. According to the coalition, the department was required to consider whether the public benefit of the proposed facility outweighed the adverse local impact. The coalition concedes that the department did evaluate the Lawsbrook Road site in terms of all the relevant criteria (see *New York Cent. R.R.* v. *Department of Pub. Utils.,* 347 Mass. 586, 593 & n.4 [1964]), but claims that the department's decision must nonetheless be reversed because the department did not equally so evaluate the alternative sites. We find no merit in this argument.

General Laws c. 40A, § 3, imposes no requirement that the department consider and reject every possible alternative site presented to it by an intervener. "[T]he availability of other sites and the efforts made to secure them, in so far as pertinent at all, are merely matters of fact bearing up on the main question." *Wenham* v. *Department of Pub. Utils.,* 333 Mass. 15, 17 (1955) (interpreting predecessor statute to c. 40A, § 3).[7]

Furthermore, while our decisions certainly require a "statement of reasons" from the department on each issue of fact or

---

document was required by the interrogatories. Since the department reviewed the document in the course of deciding the motion for reconsideration and concluded that the document did not discredit Goodenough and Hollowell, we can discern no prejudice to the coalition's substantial rights resulting from nonproduction of the INGS document. See G. L. c. 30A, § 14 (7).

[7]Cf. *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.,* 395 Mass. 836, 843 n.9 (1985) (evidence of alternative financing sources "a guiding factor, not a governing one," with respect to the department's decision under G. L. c. 164, § 14).

law, see, e.g., *School Comm. of Chicopee* v. *Massachusetts Comm'n Against Discrimination,* 361 Mass. 352, 354 (1972); *New York Cent. R.R.* v. *Department of Pub. Utils., supra* at 593, the department is "not required to address in its statement of reasons all the arguments of [an intervener] with the same detail as would be required if the [intervener] 'had been an unsuccessful party whose own proposal was before the department for action.' " *Attorney Gen.* v. *Department of Pub. Utils.,* 392 Mass. 262, 265 n.2 (1984), quoting *Trustees of Clark Univ.* v. *Department of Pub. Utils.,* 372 Mass. 331, 334 (1977). As an intervening party, the coalition could not require the department to engage in a process of elimination to determine which of several alternative sites was best. All that was required was that the department properly determine that the use of the *proposed* site is reasonably necessary for the convenience or welfare of the public. G. L. c. 40A, § 3. The department made that finding on the basis of substantial evidence and with due regard for the relevant factors to be considered. Therefore, we reject the coalition's final claim of error. Judgment shall enter in the Supreme Judicial Court for the county of Suffolk affirming the department's decision.

*So ordered.*