PLANNING BOARD OF BRAINTREE & others[1] *vs.*
DEPARTMENT OF PUBLIC UTILITIES & another.[2]

Suffolk. December 7, 1994. - April 11, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Public Utilities*, Electric company, Judicial review. *Department of Public
    Utilities. Administrative Law*, Judicial review, Findings, Hearing. *Mu-
    nicipal Corporations*, Municipal electric plant. *Electric Company. Cor-
    poration*, Public service corporation. *Zoning*, Public utilities, Exemp-
    tion. *Environment*, Environmental impact report.

Statement of the standard of review of a petition under G. L. c. 25, § 5,
    seeking review of a decision of the Department of Public Utilities. [25]
Statement of the standards applicable to a determination whether an en-
    tity is a "public service corporation" for purposes of conferring jurisdic-
    tion on the Department of Public Utilities to grant it an exemption
    from zoning ordinances or by-laws under G. L. c. 40A, § 3. [25-27]
The Department of Public Utilities correctly determined that an unincor-
    porated municipal electric light department is a "public service corpo-
    ration" for purposes of the zoning exemption set forth in G. L. c. 40A,
    § 3, where the department was an independent entity created by statute
    with public service obligations and any distinction between such an en-
    tity and a corporation simply reflected differences in ownership and
    structure. [27-28]
The Department of Public Utilities made sufficient specification of an ex-
    emption from a municipal zoning by-law under G. L. c. 40A, § 3, by
    specifying the land, the structure and the use; setting forth the particu-
    lar sections of the by-law was not required. [28-29]
Where, with respect to the construction of a municipal electric substation,
    the Secretary of Environmental Affairs determined that no environmen-
    tal impact report was required, no further findings under G. L. c. 30,
    § 61, were required of the Department of Public Utilities in granting
    the utility an exemption pursuant to G. L. c. 40A, § 3, from provisions
    of the applicable zoning by-law. [29-30]
Substantial evidence supported the conclusion of the Department of Public
    Utilities that a particular site for a proposed electric substation was

---

[1]Edwin Pinola and Janice Pinola.

[2]Braintree Electric Light Department.

reasonably necessary for the convenience or welfare of the public, and the department's decision under G. L. c. 40A, § 3, to exempt the facility from provisions of the applicable zoning by-law did not require consideration of possible alternative sites. [30]

At a hearing, the Department of Public Utilities utilized proper procedure in accepting prepared written testimony adopted under oath and properly denied a party's request to recross-examine a witness where the party had waived cross-examination and where no new issues had been raised by the department's cross-examination. [30-31]

A utility properly petitioned the Department of Public Utilities for a zoning exemption under G. L. c. 40A, § 3, for a substation already constructed, where the statute by its terms applies to structures that already exist. [31]

The pendency of an action in Superior Court addressing the scope of certain zoning by-laws did not operate to prohibit a utility from filing a petition with the Department of Public Utilities for relief from zoning restrictions pursuant to G. L. c. 40A, § 3. [31-32]

In a hearing before the Department of Public Utilities, the department properly denied a party's request for rulings that was not timely filed. [32]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 20, 1991.

The case was reported by *Lynch*, J.

*Bryan J. Stevens* for Edwin Pinola & another.

*Eric A. Smith*, Assistant Attorney General, for Department of Public Utilities.

*Alan K. Posner* for Braintree Electric Light Department.

*Phyllis Field*, for Planning Board of Braintree, was present but did not argue.

ABRAMS, J. A single justice of this court has reserved and reported this case concerning the correctness of the Department of Public Utilities's (department's) decision to grant the Braintree Electric Light Department (BELD) an exemption from the zoning by-law for its new electric substation. See G. L. c. 40A, § 3 (1992 ed.). BELD is a municipal electric department established by two successive town votes in 1891 pursuant to St. 1891, c. 370, § 2. It is located in Braintree and is the sole supplier of retail electric service in the town.

On April 14, 1987, BELD filed a petition, pursuant to G. L. c. 164, §§ 69H and 69I (1992 ed.), with the Energy Facilities Siting Council (now Energy Facilities Siting Board [EFSB]) for approval to construct a substation and two transmission lines. The EFSB approved the construction, as did the Braintree conservation commission. Some Braintree residents appealed from this decision to the Department of Environmental Quality Engineering (now Department of Environmental Protection) which conditionally approved the project.

On July 28, 1988, the Braintree building inspector issued an opinion that no building or special permit was required for the substation. On a request for reconsideration filed by some Braintree residents,[3] the building inspector reaffirmed his decision. The residents appealed from the decision to the Braintree zoning board of appeals which affirmed the decision of the building inspector. The residents and the planning board of Braintree (planning board) appealed to the Superior Court, pursuant to G. L. c. 40A, § 17 (1992 ed.). After a hearing, the Superior Court judge denied the plaintiffs' motion to enjoin the construction of the substation.[4] BELD completed construction of the substation in December, 1989, and in June, 1990, commenced its operation.

On October 2, 1990, while the case was pending in the Superior Court, BELD filed a petition with the department, pursuant to G. L. c. 40A, § 3, for an exemption from the town's zoning by-law.[5] At a hearing on November 1, 1990, the department allowed motions to intervene filed by the

---

[3] The residents included the plaintiffs, Janice and Edwin Pinola, and other residents not before us in this appeal.

[4] At the hearing on the restraining order, BELD represented that, "in the unlikely event that a legal challenge to the substation is successful, BELD would remove the equipment and relocate to a new site."

[5] BELD requested an exemption from the special permit and dimensional requirements of town by-law § 135-701 (requiring one hundred feet of frontage), § 135-102 (defining a building), § 135-601 (defining an essential service), § 135-608 (requiring special permit for construction in flood plain), § 135-201 (requiring building permit), § 135-711 (requiring a special permit) and "any other applicable zoning requirements."

present plaintiffs, Janice and Edwin Pinola, abutters of the substation, and the planning board. On November 1, 1991, the department issued a decision granting BELD an exemption from local zoning requirements. The plaintiffs sought judicial review of the department's decision pursuant to G. L. c. 25, § 5 (1992 ed.).[6] BELD moved to intervene, and a single justice of this court allowed the motion on December 23, 1992. On November 23, 1993, BELD moved to dismiss for lack of prosecution. A single justice denied the motion to dismiss on March 24, 1994, and on March 28, 1994, reserved and reported the case to this court. We conclude that the department's decision should be affirmed.

1. *Standard of review.* "Our review of petitions under G. L. c. 25, § 5, is limited, although not perfunctory." *Wolf* v. *Department of Pub. Utils.*, 407 Mass. 363, 367 (1990). "We will uphold the department's actions unless the plaintiffs can demonstrate that they are flawed by an error of law, lack support by substantial evidence, are arbitrary or capricious, or suffer from one of the other defects spelled out in [G. L. c. 30A,] § 14 (7) [1992 ed.]." *Id.*, quoting *Zachs* v. *Department of Pub. Utils.*, 406 Mass. 217, 219-220 (1989). "General Laws c. 25, § 5, allocates to [the plaintiffs] the burden of proving such error. This burden is a heavy one. We give great deference to the department's expertise and experience in areas where the Legislature has delegated to it decision-making authority." *Wolf, supra* at 367, quoting *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 533 (1984).

2. *Jurisdiction under G. L. c. 40A, § 3.* General Laws c. 40A, § 3, authorizes the department to exempt land or structures used by public service corporations from zoning ordinances and by-laws if the department determines that the present or proposed use of the land or structure is reason-

---

[6]This section provides, in pertinent part: "An appeal as to matters of law from any final decision, order or ruling of the [department] may be taken to the supreme judicial court by an aggrieved party in interest . . . ." G. L. c. 25, § 5 (1992 ed.).

ably necessary for the convenience or welfare of the public.[7] The plaintiffs argue that the department did not have jurisdiction to grant BELD an exemption under G. L. c. 40A, § 3, because BELD is not a public service corporation.

Our cases determining whether an entity qualifies as a public service corporation have addressed private corporations. See, e.g., *Save The Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 680 (1975); *Truro* v. *Department of Pub. Utils.*, 365 Mass. 407, 408 (1974); *Attorney Gen.* v. *Haverhill Gas Light Co.*, 215 Mass. 394, 398 (1913). Nonetheless, "public service corporation" is a term of art which is not limited to corporations, but may include municipal electric departments such as BELD. See *Brand* v. *Water Comm'rs of Billerica*, 242 Mass. 223, 226 (1922) (referring to town water commissioners as "public service company" and "corporation"). See also Yankee Celltell, D.P.U. 84-72 (1984) (applying G. L. c. 40A, § 3, to utility owned by a partnership); Rep. A.G., Pub. Doc. No. 12, at 182 (1962) (Metropolitan Transit Authority was public service corporation under predecessor of G. L. c. 40A, § 3).

In determining whether BELD should be considered a public service corporation, the department applied the standards set forth in *Save the Bay, Inc.*, *supra* at 680, namely: "whether [it] is organized pursuant to an appropriate franchise from the State to provide for a necessity or convenience to the general public which could not be furnished through the ordinary channels of private business; whether [it] is subject to the requisite degree of governmental control and regulation; and the nature of the public benefit to be derived from the service provided" (decided under former G. L.

---

[7]This section provides in relevant part: "Land or structures used, or to be used by a public service corporation may be exempted in particular respects from the operation of a zoning ordinance or by-law if, upon petition of the corporation, the department of public utilities shall, after notice given pursuant to section eleven and public hearing in the town or city, determine the exemptions required and find that the present or proposed use of the land or structure is reasonably necessary for the convenience or welfare of the public . . . ." G. L. c. 40A, § 3 (1992 ed.).

c. 40A, § 10 [1992 ed.]). The department determined that these standards were met. The plaintiffs do not challenge that determination. Instead, they argue that, because BELD is not a corporation, it cannot be a public service corporation.

Like a private corporation, BELD is an independent entity created pursuant to a statute. St. 1891, c. 370. See *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 298 (1939) (power to maintain gas and electric plant arises from authority conferred by G. L. c. 164); *MacRae* v. *Selectmen of Concord,* 296 Mass. 394, 396-397 (1937) ("right to erect, maintain and operate electric plants is not one of the general powers conferred by implication of law upon municipalities"). It is separate from the town and exists to operate property "in its right of private ownership," to the end of providing electricity to retail consumers. *Whiting* v. *Mayor of Holyoke,* 272 Mass. 116, 120 (1930).

The zoning exemption available under G. L. c. 40A, § 3, is intended to assure utilities' ability to carry out their obligation to serve the public when this duty conflicts with local interests. See, e.g., *Pereira* v. *New England LNG Co.,* 364 Mass. 109, 119-120 (1973), quoting *Mezitt* v. *Department of Pub. Utils.,* 354 Mass. 692, 695 (1968); *New York Cent. R.R.* v. *Department of Pub. Utils.,* 347 Mass. 586, 592 (1964). See also *Truro, supra* at 410, quoting *New York Cent. R.R., supra* at 592 (G. L. c. 40A, § 10, ensures "broad and balanced consideration of all aspects of the general public interest and welfare and not merely examination of the local and individual interests which might be affected"). This concern for public service applies to all utilities, not just those operated by corporations.

Municipal and private utilities are subject to identical public service obligations. See *Rounds* v. *Water & Sewer Comm'rs of Wilmington,* 347 Mass. 40, 44 (1964); Wellesley Bd. of Pub. Works, D.P.U. 86-45/86-144, at 18-20 (1987). Each has the same "duty to exercise [their] franchise for the benefit of the public, with a reasonable regard for the rights of individuals who desire to be served, and without discrimination between them." *Bertone* v. *Department of Pub. Utils.,*

411 Mass. 536, 544 (1992), quoting *Weld* v. *Gas & Elec. Light Comm'rs*, 197 Mass. 556, 557 (1908). Because they have the same duty to serve as private utilities, municipal utilities need to have the same tools available to perform their duty, including the G. L. c. 40A, § 3, exemption.

The plaintiffs argue that municipal electric departments are governed not by regular corporate laws, but by special statutory provisions in G. L. c. 164 (1992 ed.). *Municipal Light Comm'n of Taunton* v. *Taunton*, 323 Mass. 79, 84 (1948). *Adie, supra* at 298. This argument misses the mark. While G. L. c. 164 makes distinctions between electric utility corporations and municipal electric departments, these distinctions simply reflect the differences in ownership and structure. See G. L. c. 164, §§ 3-33 (applying to corporations); §§ 34-69 (applying to municipal operations). They do not provide any reason for treating such utilities differently under G. L. c. 40A, § 3. In fact, for certain purposes, the Legislature has included municipal electric departments within the term "corporation." See G. L. c. 164, § 2 (1992 ed.) ("in construing [certain sections], the terms 'corporation,' 'gas company,' and 'electric company' shall include municipal corporations which own or may acquire municipal lighting plants"). There was more than ample evidence to support the department's determination that BELD should be treated as a public service corporation.[8]

3. *Particularity.* General Laws c. 40A, § 3, provides that "a public service corporation may be exempted in *particular respects*" from zoning by-laws if the department "*determine[s] the exemptions required*" (emphasis added). The plaintiffs argue that the requirement of particular specifica-

---

[8]The plaintiffs argue that BELD's position is inconsistent with the position it maintained, and upon which it prevailed in a recent case. Conley *vs.* Braintree Elec. Light Dep't, Norfolk Superior Court No. 88-727. The issue there was whether the Massachusetts Tort Claims Act, G. L. c. 258, § 1 (1992 ed.), which has since been amended, and its liability limitations applied to BELD. BELD argued that the exclusion from the act which covers "independent body politic and corporate" entities did not apply to it. The Tort Claims Act is unrelated to and does not govern the issues before us.

tion of the applicable sections of the by-law was not met. BELD's G. L. c. 40A, § 3, application set forth the parts of the by-law which, according to the plaintiffs, the substation violated. The department determined that at least some zoning exemptions would be required to remove any legal cloud from the substation and exempted the substation from those by-laws which apply to it.[9] The department has the power to exempt land or structures in all respects. The exemption is based on the fact that the use is "reasonably necessary for the convenience or welfare of the public." G. L. c. 40A, § 3. There is no reason to require the department to determine which specific by-laws apply, simply so it can list them as the specific by-laws from which the use is exempted. The department can exempt specified uses of specified property from by-laws and ordinances to the extent applicable. That the land, structure, and use are specified is sufficient.

4. *G. L. c. 30, § 61, finding.* The plaintiffs next argue that BELD did not satisfy its burden of producing evidence to warrant a finding pursuant to G. L. c. 30, § 61 (1992 ed.).[10] The Secretary of Environmental Affairs determined that no environmental impact report (EIR) was required. See G. L. c. 30, § 62A. Because "no EIR [was] required, no [G. L.] c. 30, § 61 findings [were] necessary." 301 Code Mass. Regs. § 11.01 (3) (1993). See, e.g., Massachusetts Elec. Co., D.P.U. 89-135/136/137, at 10 (1990). See also *Villages Dev. Co.* v. *Secretary of Envtl. Affairs,* 410 Mass. 100, 102-103 (1991) (EIR provides information necessary for a determination under G. L. c. 30, § 61); *Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.,* 366 Mass. 755, 761 (1975) ("it is the final EIR which provides the data on which the § 61 decision . . . is to be based and against which that

---

[9]The department only granted those exemptions that were necessary for the substation as presented to it.

[10]This section provides, in relevant part, that "[a]ny determination made by an agency of the commonwealth shall include a finding describing the environmental impact, if any, of the project and a finding that all feasible measures have been taken to avoid or minimize said impact." G. L. c. 30, § 61 (1992 ed.).

decision is to be evaluated by a reviewing court. If no final EIR is required in a given case, judicial review of the agency's decision that § 61 has been complied with must be minimal").

5. *Alternative sites.* The plaintiffs argue that it was error for the department to exclude evidence on possible alternative sites for the substation and that such evidence was necessary under G. L. c. 40A, § 3. General Laws c. 40A, § 3, does not require consideration of alternative sites. See *Martorano* v. *Department of Pub. Utils.,* 401 Mass. 257, 265 (1987), quoting *Wenham* v. *Department of Pub. Utils.,* 333 Mass. 15, 17 (1955) ("the availability of other sites and the efforts made to secure them, in so far as pertinent at all, are merely matters of fact bearing upon the main question"). The exempted site need not be the "best" site available. All that is needed is that its use be "reasonably necessary for the convenience or welfare of the public." G. L. c. 40A, § 3. See *Martorano, supra* at 266. There was substantial evidence supporting such a conclusion.[11] See *id.* at 264, quoting *School Comm. of Boston* v. *Board of Educ.,* 363 Mass. 125, 128 (1972) ("the court must accept the factual determinations made by the [department] if it finds they are supported by substantial evidence").

6. *Hearing testimony.* The plaintiffs argue that the procedures of the department in hearing the petition were deficient. Specifically, they object to the department's allowance of pre-filed testimony and the denial of cross-examination. While much of the testimony elicited by BELD took the form of pre-filed written testimony, the witnesses adopted it under oath and on the record at the hearing. The witnesses were made available for cross-examination by the plaintiffs and were cross-examined by the department. The department "need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative

---

[11]Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1992 ed.). See *Martorano* v. *Department of Pub. Utils.,* 401 Mass. 257, 261 n.5 (1987).

effect . . . if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11 (2). The department "may allow prepared direct testimony of any witness to be offered as an exhibit and may omit oral presentation of the testimony." 220 Code Mass. Regs. § 1.10 (4) (1986).

The plaintiffs also object to the department's denial of their request to recross-examine one of BELD's witnesses who was cross-examined by the department. At the hearing, after a brief cross-examination of one witness, the plaintiffs announced that they would not cross-examine the other BELD witnesses.[12] The record discloses that the hearing officer and the chairman of the department told the plaintiffs that if they waived their right to cross-examine BELD's witnesses, then any cross and recross-examination of BELD witnesses would be limited to new issues raised by the department's cross-examination of these witnesses. The plaintiffs waived their right to cross-examine BELD's other witnesses. The department's cross-examination did not raise any new issues. The department's denial of the plaintiffs' request to recross-examine the BELD witness was therefore proper.

7. *Timeliness of petition.* The plaintiffs next contend that BELD should not have been allowed to petition for an exemption under G. L. c. 40A, § 3, after the substation was constructed. By its terms, G. L. c. 40A, § 3, applies to structures that already exist, as well as to those that have yet to be constructed (department can exempt "[l]and or structures *used, or to be used*" if the *"present or proposed use"* meets the reasonably necessary requirement [emphasis added]).

The plaintiffs also argue that it was improper for BELD to file a petition for relief under G. L. c. 40A, § 3, in light of the pending Superior Court litigation.[13] BELD filed the petition under G. L. c. 40A, § 3, due to its concern over the

---

[12]They did reserve the right to cross-examine any new witnesses presented by BELD. There were no new witnesses.

[13]The plaintiffs claim that this complaint was an attempt by BELD to cover up a bad faith misrepresentation to the Superior Court is not supported by the record.

effect prolonged litigation could have on its ability to serve the public. The Superior Court litigation addressed the scope of the zoning by-law. The proceedings before the department were not prohibited by the Superior Court litigation.

8. *Denial of rulings.* Finally, the plaintiffs dispute the department's denial of their request for rulings. The department denied the request because it was not timely filed. See 220 Code Mass. Regs. § 1.11 (1) (1986). In its final order, the department responded to the issues raised in the request.

The case is remanded to the Supreme Judicial Court for Suffolk County for the entry of a judgment affirming the decision of the department.

*So ordered.*