## CONSERVATION COMMISSION OF BROCKTON *vs.* DEPARTMENT OF ENVIRONMENTAL PROTECTION & another.[1]

No. 11-P-766.

Plymouth. December 15, 2011. - April 19, 2012.

Present: RAPOZA, C.J., CYPHER, & SULLIVAN, JJ.

*Wetlands Protection Act. Department of Environmental Protection. Administrative Law,* Agency's interpretation of regulation. *Zoning,* Wetlands, Public utilities. *Words,* "Work," "Alter."

In an appeal from a decision of the Department of Environmental Protection (DEP) authorizing the construction of a power plant near a river, the judge did not err in affirming the DEP's determination that the project proponent did not have to include in its permit application information concerning the impact of its purchase of water from a waste water reclamation facility on the river's water levels and on the wetlands bordering the river [605-608]; further, the judge did not err in upholding the DEP's determination that the proponent's application for exemption from local zoning satisfied the Wetlands Protection Act requirement that applicants seek all obtainable local permits and approvals when filing a notice of intent with the local conservation commission [608-609].

CIVIL ACTION commenced in the Superior Court Department on April 9, 2010.

The case was heard by *Robert C. Cosgrove,* J., on a motion for judgment on the pleadings.

*Gregor I. McGregor* for the plaintiff.

*Louis M. Dundin,* Assistant Attorney General, for Department of Environmental Protection.

*Barry P. Fogel* for Brockton Power Company, LLC.

SULLIVAN, J. This is an appeal pursuant to the Administrative Procedures Act, G. L. c. 30A, § 14, from a decision of the Department of Environmental Protection (DEP) authorizing the construction of a 350 megawatt power plant (the plant) near the

---

[1]Brockton Power Company, LLC.

Salisbury Plain River. The conservation commission of Brockton (commission) appeals from a judgment entered by a judge of the Superior Court upholding the final decision and order of the DEP on two grounds. First, the commission claims that the judge erred in affirming the DEP's determination that the project proponent, Brockton Power Company, LLC (Brockton Power), did not have to include in its permit application information concerning the impact of its purchase of water from the Brockton advanced waste water reclamation facility (Brockton Water) on the river's water levels and on the wetlands bordering the river. Second, the commission claims that the judge erred in upholding the DEP's determination that Brockton Power's application for exemption from local zoning under G. L. c. 40A, § 3, satisfied the Wetlands Protection Act (WPA) requirement that applicants seek all obtainable local permits and approvals when filing a notice of intent with the local conservation commission. See G. L. c. 131, § 40. We affirm.[2]

*Background.* Brockton Power proposes to build the project partially within 100 feet of vegetated wetlands bordering the Salisbury Plain River, a protected wetland area. The plant would not take water directly from the river. Rather, the plant's cooling towers are projected to use approximately 1.9 million gallons per day of treated effluent from the adjacent Brockton Water facility — water that would otherwise be discharged into the river under the terms of an existing NPDES/MA[3] surface water discharge permit. The proposed plant is projected to return .3 million gallons of water per day to the river, and to disperse the remaining 1.6 million gallons per day by evaporation as steam. Brockton Power's consumption of treated effluent may result in discharge into the Salisbury Plain River of approximately 1.6 million fewer gallons per day. Thus, Brockton Water's sale of water to Brockton Power will reduce the existing addition to the river's flow.

---

[2]The commission has also expressed objections to the proposed location of certain pipes in the initial version of the project plans. We do not consider the issue, as the proposed location of the pipes changed during the course of these proceedings, and the issue was not raised before the DEP.

[3]"NPDES/MA" stands for "National Pollutant Discharge Elimination System/ Massachusetts." NPDES/MA permits are issued under the Massachusetts Clean Waters Act, G. L. c. 21, §§ 26-53, and the Federal Clean Water Act, 33 U.S.C. §§ 1251, 1370 (2006). See generally *Entergy Nuclear Generation Co.* v. *Department of Envtl. Protection*, 459 Mass. 319 (2011).

The WPA prohibits certain activities that would alter wetlands in the absence of a wetlands permit. G. L. c. 131, § 40. A person who desires to perform "work" within the 100 foot area surrounding wetlands (buffer zone) that would alter the wetlands may be required to obtain a permit, known as an order of conditions, and file a notice of intent (NOI)[4] with the local conservation commission. See G. L. c. 131, § 40; 310 Code Mass. Regs. § 10.02(2)(b) (2007).

Brockton Power is located at a distance from the wetlands, but a portion of the project would fall within the buffer zone. Brockton Power filed an NOI with the commission on June 27, 2008. The NOI contained a detailed discussion of the impact of the construction of the project on the wetlands and the buffer zone, as well as remediation measures. The NOI did not address the impact of the purchase of the water (and concomitant reduction in discharge) on water levels or the wetlands.

On July 12, 2007, Brockton Power applied to the Department of Public Utilities (DPU) for an exemption from Brockton's relevant zoning restrictions pursuant to G. L. c. 40A, § 3, but the commission deemed the application for exemption insufficient. On October 23, 2008, the commission denied Brockton Power's request for approval of the project, finding that (1) the NOI contained insufficient information because it did not describe the impact of the project's use of Brockton Water's treated effluent on the water levels of the Sudbury Plains River, and (2) Brockton Power had failed to apply for local zoning approvals as required by 310 Code Mass. Regs. § 10.05(4)(e)-(f) (2008).

In early November, 2008, Brockton Power appealed the commission's decision to the DEP Bureau of Resource Protection (DEP Bureau), requesting a superseding order of conditions. A

---

[4]The DEP's jurisdictional regulations provide that activity which occurs outside the wetlands or the buffer zone does not trigger the obligation to file an NOI unless there is an actual alteration of the wetland resource area or buffer zone. See 310 Code Mass. Regs. § 10.02(2)(d) (2008). If the work falls inside a wetland resource area, then an NOI must be filed. 310 Code Mass. Regs. § 10.02(2)(a) (2008). If the work falls within the buffer zone, then an NOI must be filed if, "in the judgment of the issuing authority," the activity will alter that area. 310 Code Mass. Regs. § 10.02(2)(b) (2007). This "judgment" is in turn informed by DEP's regulations governing wetlands generally, and inland wetlands, specifically. See 310 Code Mass. Regs. §§ 10.01-10.10 (2008), and 310 Code Mass. Regs. §§ 10.51-10.60 (2008).

superseding order of conditions approving the project issued on September 3, 2009. The DEP Bureau concluded that "Brockton Power Company's use of the effluent as cooling water would not be an alteration of a wetland resource area provided that [Brockton Water's] discharge remains within the limits of the NPDES permits and any permits issued by the MassDEP." The DEP Bureau reasoned that Brockton Water, not Brockton Power, "would have the responsibility for complying with the permitted effluent discharge requirements or amending the permits and addressing any potential impacts to the wetland resources areas."

The commission appealed from the superseding order of conditions, and both the commission and Brockton Power filed motions for summary decision under DEP adjudicatory procedures. The DEP upheld the superseding order of conditions in a final order. The DEP found that Brockton Power did not have to include the purchase of water in its NOI, because it was the customer in that transaction and not the supplier, the latter being the party that was responsible for the discharge.[5] The DEP also found that Brockton Power was not required to apply for or obtain site plan approval from the local boards before filing an NOI with the commission. The commission appealed from that final order to the Superior Court.

The Superior Court judge heard and decided the matter on the administrative record on a motion for judgment on the pleadings. See Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). The judge affirmed the final decision of the DEP in all respects, reasoning that the word "alter" in the WPA was intended to cover only that work which had a "direct" rather than an "indirect" impact on

---

[5]The DEP further found that "in the event that [Brockton Water's] sale of treated effluent to Brockton Power does result in an alteration of a wetland resource, it would be [Brockton Water], rather than Brockton Power, that would be responsible for filing an NOI, because [Brockton Water], not Brockton Power, was responsible for the discharge. . . . [T]here is no basis for a conclusion that a consumptive user of effluent discharged by another entity under an NPDES/Surface Water Discharge Permit would be required to file an NOI. NPDES/Surface Water Dischargers are governed by 310 [Code Mass. Regs. §] 10.03(4) and the [DEP's] position is correct that the [Brockton Water] discharge in compliance with the permit would not be expected to file under the Wetlands Protection Act." At oral argument, the DEP represented that it has not made a determination whether Brockton Water will be required to file an NOI or whether the discharge permit alone would suffice.

wetlands. The judge also found that the exemption process relieved Brockton Power of the obligation to apply for or obtain local zoning approval. While we do not adopt the broad "direct" versus "indirect" distinction relied on by the Superior Court judge, we affirm for the reasons stated below.

*Discussion.* We review an order allowing a motion for judgment on the pleadings de novo. See *Wheatley* v. *Massachusetts Insurers Insolvency Fund,* 456 Mass. 594, 600 (2010).

1. *"Work" and the WPA.* Because the DEP has not decided whether Brockton Water has an obligation to file an NOI, and because there was no challenge to the determination that the wetlands issues may be resolved by monitoring the NPDES/ Surface Water Discharge Permit, the issue before the Superior Court judge was whether Brockton Power's purchase of the water was "work" that required inclusion in the NOI. Our review is similarly limited to that issue.

The commission carries the "formidable burden" of showing that the agency's interpretation of its own rules is not rational. *Northbridge* v. *Natick,* 394 Mass. 70, 74 (1985), quoting from *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.,* 377 Mass. 282, 293 (1979). "[W]e review an agency's decision to determine whether it was not supported by substantial evidence, was arbitrary or capricious, or was otherwise based on an error of law." *Ten Local Citizen Group* v. *New England Wind, LLC,* 457 Mass. 222, 228 (2010).

> "This standard is highly deferential to an agency and requires 'according "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." ' [*Friends & Fishers of the Edgartown Great Pond, Inc.* v. *Department of Envtl. Protection,* 446 Mass. 830, 836 (2006)], quoting *Hotchkiss* v. *State Racing Comm'n,* 45 Mass. App. Ct. 684, 695 696, (1998). 'We ordinarily accord an agency's interpretation of its own regulation[s] considerable deference.' *Warcewicz* v. *Department of Envtl. Protection,* 410 Mass. 548, 550 (1991)."

*Ibid.*

The DEP determined that the purchase of treated wastewater

from Brockton Water was not "work"[6] within the meaning of the WPA and the related DEP regulations, and that Brockton Power was therefore not required to account for the impact of this purchase in the NOI. The commission argues that this regulatory definition of work (as applied to Brockton Power) is fundamentally at odds with the WPA, as amended in 1972, because it permits a possible alteration[7] of the Salisbury Plain River without an NOI. The commission traces with care the legislative history of the inclusion of the word "alter" in the WPA, and argues that the DEP's decision abrogates the plain meaning of the word under the statute, the regulations, and its own decisional law. We understand the commission's argument to be a challenge not to the regulation itself, but to its interpretation and application in this case. Cf. *id.* at 228-229.

The DEP did not read the word "alter" out of the statute. Instead, the DEP focused on which actor it would regulate. Put another way, the DEP did not refuse to consider *whether* an alteration might occur but, instead, focused on *who* would be responsible and *how* to regulate that conduct. This interpretation of the WPA and the DEP's own regulations is not arbitrary, capricious, or otherwise based on an error of law.

The DEP is charged with the implementation of a complex, comprehensive, and interconnected statutory scheme. See G. L. c. 21, § 43; G. L. c. 131, § 40. The DEP regulations leave decision-making regarding the scope of the NOI in the buffer zone to the expertise of the DEP. See note 4, *supra.* Here, the DEP considered the possibility that the sale of water would result in an alteration of the wetland. The DEP determined that the sale of water likely would not constitute an alteration so long as Brockton Water complied with its discharge permit. If Brockton Water violated that permit, the DEP reasoned, regulation should be at the point of discharge (Brockton Water), not

---

[6]The regulations define "work" and "activity" conterminously. 310 Code Mass. Regs. § 10.04 (2008).

[7]The regulations in pertinent part define "alter" to mean a "change in condition" to a protected wetland area and to include, among other things, "the lowering of the water level or water table," or the change in "flow patterns," or the characteristics of the receiving water. 310 Code Mass. Regs. § 10.04 (2005).

the point of purchase (Brockton Power).[8] The DEP's judgment regarding how to structure its regulatory program falls uniquely within its area of expertise, to which we give considerable deference.

The DEP's determination is fully consonant with the WPA's statutory purpose. The purpose of the WPA is to protect wetlands in order to provide benefits to the public. See *Citizens for Responsible Envtl. Mgmt.* v. *Attleboro Mall, Inc.*, 400 Mass. 658, 669 (1987). The WPA is an "entirely 'procedural' " statute, which achieves these goals by granting regulators the authority to condition certain activities on, among other things, the permitting process. *Ibid.* The DEP found that the enforcement of the NPDES/MA permitting process, see note 3, *supra*, was the primary mechanism for ensuring that the discharge levels were appropriate. This allocation of regulatory authority is based on the DEP's practical concern that the WPA should first regulate the persons who have primary control over the "work" at issue. "We will not substitute our judgment as to . . . the propriety of the means chosen to implement the statutory goals, for that of the agency, so long as the regulation is rationally related to those goals." *Entergy Nuclear Generation Co.* v. *Department of Envtl. Protection*, 459 Mass. 319, 331 (2011), quoting from *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477 (1983).[9]

Contrary to the commission's argument, the DEP's decision to interpret its regulatory program in this way is fully consistent with the DEP's decisions. For example, in Matter of Penn, Mass. DEP No. 93-102 (October 13, 1998), the DEP determined that the act of closing a gate valve that controlled the flow of water from a pond constituted "work." It required the owner of the gate valve to file an NOI. Here, Brockton Water has its

---

[8]The discharge permit is not in the record. We express no opinion whether the commission or the DEP may require Brockton Water to file an NOI. See note 9, *infra.*

[9]By the same token, we recognize that the diversion of 1.6 million gallons per day of treated effluent from the Salisbury Plain River is a matter of potential consequence. If and when a contractual commitment is made by Brockton Water to Brockton Power, there will be significant limitations on any regulator's ability to restore that water. We leave the resolution of these issues to any future enforcement actions that appropriate regulatory authorities elect to pursue.

hand on the valve with respect to the water it sells to its down-stream customer, Brockton Power. The DEP has therefore chosen to deploy its available resources to regulate the conduct of Brockton Water. We find nothing in the regulations or the decisional law that suggests that it is arbitrary or capricious for the DEP to design its regulatory program in this manner.[10]

2. *The zoning exemption.* General Laws c. 131, § 40, and 310 Code Mass. Regs. § 10.05(4)(e) (2008) require an applicant to apply for "all permits, variances and approvals required by local by-law with respect to the proposed activity" that are "feasible to obtain" prior to filing its NOI with the local conservation commission. However, G. L. c. 40A, § 3, provides that public service corporations may seek and obtain from the DPU exemptions from the zoning ordinance or by-law "reasonably necessary for the convenience or welfare of the public." Called upon to harmonize these two statutory directives, the DEP determined that, as a public utility, Brockton Power need only file for an exemption with the DPU prior to filing an NOI with the commission. This interpretation reconciles the two statutes and fulfils the statutory purpose of both. See *New England Legal Foundation* v. *Boston*, 423 Mass. 602, 606 (1996). This approach permits the DPU to act on the exemption request while the NOI proceeds at the local level, and at the same time avoids the unnecessary delay and expense that would be associated with an application for zoning permits for which an exemption may be granted. If the DPU does not grant the request, the public utility must then return to the local authorities.

The commission argues that allowing the filing of an NOI before a utility has sought all possible local zoning approvals effectively eliminates any role for local conservation commissions in the over-all approval process. This overstates the issue, which is in the first instance one of timing. That is, the exemption process goes forward at the DPU; the local conservation commission acts on the NOI. Moreover, the exemption process

---

[10]The commission argues that if the DEP's interpretation is allowed to stand, anyone who wishes to alter a wetland will be able to do so merely by engaging a third party to perform the work. To the contrary, the DEP retains authority to enforce the statute and regulations against not only owners but also other third parties, such as contractors, who violate the statute. See G. L. c. 131, § 40, thirty-second par.; 310 Code Mass. Regs. § 10.02(2).

reflects the legislative determination that in the event of a dispute between the Commonwealth's decision to site a public utility, and the objections of a local zoning board, the DPU's determination takes precedence. "The zoning exemption available under G. L. c. 40A, § 3, is intended to assure utilities' ability to carry out their obligation to serve the public when this duty conflicts with local interests." *Planning Bd. of Braintree* v. *Department of Pub. Util.*, 420 Mass. 22, 27 (1995). We agree with the Superior Court judge's analysis that the purpose of the exemption for public service corporations "would be frustrated if Brockton Power were required to apply for site plan approval at the same time as it sought an exemption from it." The DEP's interpretation comports with existing precedent and is consistent with the statutory language and purpose of the respective statutes.

*Judgment affirmed.*